SCHOOL DISTRICT FOR THE CITY OF HOLLAND *v.*
HOLLAND EDUCATION ASSOCIATION.

Decision of the Court.

1. Injunction—Temporary—Strikes—Public Schoolteacher.

Temporary injunction against strike by public schoolteachers is ordered dissolved and case remanded for early hearing to determine whether the plaintiff school board had refused to bargain in good faith, per Black, O'Hara, and Adams, JJ., and injunction dissolved because the teachers who had not signed contracts were not yet public employees subject to statute prohibiting strike by public employees, and such an injunction violated the prohibition against involuntary servitude, per T. M. Kavanagh and Souris, JJ. (US Const, Am 13; Mich Const 1963, art 1, § 9; CL 1948, § 423.201, as amended by PA 1965, No 379; CLS 1961, § 340.569, as amended by PA 1965, No 14).

Separate Opinion.

Black, O'Hara, and Adams, JJ.

2. Appeal and Error—Equity—De Novo.

An equity case on appeal is reviewed de novo.

3. States—Public Employees—Strikes—Statutes.

The State may, within limitations, deny to its employees the right to strike, and statute prohibiting public employees from striking is valid (CL 1948, § 423.201 et seq., as amended by PA 1965, No 379).

4. Labor Relations—Mediation of Labor Dispute—Public Schoolteachers—Jurisdiction.

The provision of school code requiring teachers' contracts to be in writing and act prohibiting strikes in public employment

References for Points in Headnotes

[1, 3–9, 13, 15–17] 31 Am Jur, Labor §§ 56, 511, 750; 47 Am Jur, Schools § 109.
[2] 5 Am Jur 2d, Appeal and Error § 967.
[10] 31 Am Jur, Labor § 498.
[11, 12, 18–21] 31 Am Jur, Labor § 580.
[14] 5 Am Jur 2d, Appeal and Error § 1009.

*are construed together as giving jurisdiction' to labor media-
tion board to mediate grievances in advance of the determina-
tion of salary provisions, and in advance of the execution of
the written contracts of teachers (CL 1948, § 423.201 et seq.;
CLS 1961, § 340.569, as amended by PA 1965, No 14).*

5. SAME—MEDIATION OF LABOR DISPUTES—PUBLIC SCHOOLTEACHERS.
   *Public schoolteachers are "employees" within the terms of the
   act prohibiting strikes by public employees (CL 1948, § 423.201,
   as amended by PA 1965, No 379).*

6. SAME—STATUTES—PUBLIC EMPLOYEES—REMEDIES.
   *Remedy provision of public employees relations act deals only
   with after-the-fact remedies by the employee and does not
   provide the exclusive remedy (CL 1948, § 423.201, as amended
   by PA 1965, No 379).*

7. SAME — PUBLIC EMPLOYEES RELATIONS ACT — REMEDY — INJUNC-
   TION.
   *Remedy provision of public employees relations act providing
   for discipline of striking public employees and review pro-
   cedure is not the exclusive remedy, and it does not remove
   the power of courts to enjoin strikes by public employees
   (CL 1948, § 423.201, as amended by PA 1965, No 379).*

8. INJUNCTION—STRIKES—PUBLIC EMPLOYEES.
   *Injunctive relief can be granted, but courts are not required
   to grant it in every case of a strike by public employees
   (CL 1948, § 423.201, as amended by PA 1965, No 379).*

9. SAME—STRIKES—PUBLIC EMPLOYEES.
   *A concert of prohibited action by public employees in striking
   is not sufficient, alone, to justify injunctive relief.*

10. SAME—SHOWING SUFFICIENT TO ISSUE—VIOLENCE—LABOR DIS-
    PUTES.
    *A showing of violence, irreparable injury, or breach of the
    peace is necessary in order to obtain an injunction in a labor
    dispute.*

11. SAME—TEMPORARY INJUNCTION—TEACHERS STRIKES—EVIDENCE.
    *A showing that if an injunction were not issued, the district's
    schools would not open and be staffed by teachers on the date
    scheduled was insufficient to justify issuance of temporary in-
    junction against a strike by the teachers.*

12. SAME—DISCRETION OF COURT—EVIDENCE.
    *Ordinarily, the great discretion allowed a trial judge in the matter
    of granting or withholding of injunctive relief is not inter-*

fered with by the Supreme Court, but where there is a lack of proof which would support the issuance of a temporary injunction, the injunction should be dissolved.

13. SAME—REMAND—RECORD.

Dissolution of temporary injunction, requiring teachers in public schools to return to work, for lack of proof justifying its issuance, is followed by remand for further proceedings in which it is suggested that inquiry be made whether plaintiff school district has refused to bargain in good faith, and whether an injunction should issue at all, and if so, on what terms and for what period in light of the whole record to be adduced.

14. COSTS—PUBLIC QUESTION—TEACHERS STRIKES.

No costs are allowed on appeal from issuance of temporary injunction requiring striking teachers to return to work, a public question being involved.

SEPARATE OPINION.

T. M. KAVANAGH and SOURIS, JJ.

15. LABOR RELATIONS—MEDIATION OF LABOR DISPUTES—SCHOOL-TEACHERS.

Public schoolteachers who have not entered into contracts of employment with a school district and who did not resume their teaching duties on the day set by the board of education are not on strike in violation of statute prohibiting public employees from striking since they were not under contract and there was no obligation to report for duty (CL 1948, § 423.201, as amended by PA 1965, No 379; CLS 1961, § 340-.569, as amended by PA 1965, No 14).

16. INJUNCTION—TEACHERS—ABSTENTION FROM WORK.

Injunctive order enjoining public schoolteachers, not under contract, from concerted abstention from employment violates the involuntary servitude provisions of the United States and State Constitutions (US Const, Am 13; Mich Const 1963, art 1, § 9).

DISSENTING OPINION.

DETHMERS, C. J., and KELLY, J.

17. LABOR RELATIONS—MEDIATION OF LABOR DISPUTES—SCHOOL-TEACHERS.

Public schoolteachers are public employees within the statute prohibiting strikes by certain public employees, they are subject

to the no-strike provisions, and the courts have jurisdiction to restrain prohibited strikes by public employees (CL 1948, § 423.201, as amended by PA 1965, No 379).

18. SAME—TEMPORARY INJUNCTION—STRIKES—EVIDENCE.

*A showing that if an injunction were not issued, the district's schools would not open and be staffed by teachers on the date scheduled was sufficient to justify issuance of a temporary injunction against a strike by teachers.*

DISSENTING OPINION.

BRENNAN, J.

19. INJUNCTION—TEMPORARY—MAINTENANCE OF STATUS QUO.

*The object of preliminary injunctions is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either.*

20. SAME—TEMPORARY—MAINTENANCE OF STATUS QUO—IRREPARABLE INJURY.

*The maintenance of the status quo is not the only function of a temporary injunction as the court can also consider whether under all the facts and circumstances of the case the issuance of the temporary injunction will maintain the parties in that status which is least likely to do irreparable injury to the party who ultimately prevails.*

21. SAME—TEMPORARY—MAINTENANCE OF STATUS QUO—STRIKE BY PUBLIC SCHOOLTEACHERS.

*Order granting temporary injunction against strike by public schoolteachers should be affirmed and status quo maintained until circuit court has had a full evidentiary hearing to determine whether the school board's treatment of the teachers has been and is equitable and reasonable, and the circuit court is directed to proceed with dispatch so that a decision on a final injunction can be made before the end of the present school year.*

Appeal from Court of Appeals, Division 3, Fitzgerald, P. J., and Burns and Holbrook, JJ., affirming Ottawa, Smith (Raymond A.), J. Submitted October 6, 1967. (Calendar No. 17, Docket No. 51,874.) Decided April 1, 1968.

7 Mich App 569, reversed.

Complaint by the School District for the City of Holland in Ottawa and Allegan Counties, against Holland Education Association, Winona Penna, Ted Boeve, Margaret Depree, Dorothy Bradish, Barbara Lampen, Della Bowman, and others to enjoin a strike by defendant schoolteachers, and to prevent the Holland Education Association and remaining defendants from encouraging, inducing, or persuading teachers to strike. A temporary injunction, granting such relief, was entered by the circuit court and affirmed by the Court of Appeals. Defendants appeal. Reversed and remanded.

*Miller, Johnson, Snell & Cummiskey (Norman E. Jabin* and *Phillip F. Wood,* of counsel), and *Ten Cate, Townsend & Cunningham,* for plaintiff.

*Foster, Campbell, Lindemer and McGurrin (Theodore W. Swift* and *David C. Coey, Edmund E. Shepherd,* and *J. Michael Warren,* of counsel), for defendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stewart H. Freeman,* Assistant Attorney General, intervening at invitation of the Court.

*Amici Curiae:*
Crestwood Education Association, by *Ellman & Ellman.*

Michigan Association of School Boards, by *Keller, Thoma, McManus & Keller (Leonard A. Keller* and *Charles E. Keller,* of counsel).

National Education Association, by *Kaye, Scholer, Fierman, Hays & Handler (Donald H. Wollett, Peter M. Fishbein,* and *Allen Kezsbom,* of counsel).

O'HARA, J. Leave to appeal was granted in this case to review an order of the Court of Appeals.[1]

---

[1] 7 Mich App 569.

The order denied a stay of proceedings previously granted and denied the prayer of the appellants to dissolve a temporary injunction. The order remanded the cause to the circuit court for hearing on the merits.

This is a chancery case. The constitutional provision (Const 1963, art 6, § 5) abolishes the distinctions between law and equity *proceedings*. It did not abolish the historic difference between law and equity. We note this because it is as a court of equity we sit in the case at bar. In this, as in all other cases clearly in equity, we hear appeals *de novo*. The reason for this restatement of principle will appear decisionally later in our opinion.

In 1947, the legislature enacted what is generally referred to as the Hutchinson act. CL 1948, § 423-.201 *et seq.*, as amended by PA 1965, No 379 (Stat Ann 1960 Rev and Stat Ann 1968 Cum Supp § 17.455 [1] *et seq.*).

We herewith set forth the title to the act as amended by PA 1965, No 379:

"An act to prohibit strikes by certain public employees; to provide the review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; to declare and protect the rights and privileges of public employees; and to prescribe means of enforcement and penalties for the violation of the provisions of this act."

Its first section, as amended by PA 1965, No 379, defines a strike:

"As used in this act the word 'strike' shall mean the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing

or coercing a change in the conditions, or compensation, or the rights, privileges or obligations of employment."

The second section specifies the employees affected:

"No person holding a position by appointment or employment in the government of the State of Michigan, or in the goverment of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike."

In the late summer of 1967 the teachers in the School District for the City of Holland, Ottawa and Allegan counties, acting through their duly certified collective bargaining agency, did not resume their teaching duties on the day set by the board of education. If they were employees within the meaning of the statute they were on strike as that term is defined in the statute.

The school district sought an injunction restraining the teachers from withholding their services. A hearing was held and the trial chancellor issued a temporary injunction. The Court of Appeals denied continuation of a stay order previously granted and the prayer to dissolve the injunction. We likewise denied a stay order and declined to dissolve the injunction but granted leave to appeal. The case is before us in that posture. Regrettably, we have a meager record, the pleadings, transcribed colloquies between court and counsel, and oral argument. To the extent possible, in order that our decision be precedentially meaningful, we will discuss those basic issues which relate to the legal concepts which we consider must govern, and will not limit our-

selves to the narrow question of the propriety of the issuance of the temporary injunction.

We acknowledge the very thorough and helpful briefs of the parties and those filed *amicus curiae.*

The first argument to which we must address ourselves is the challenge to the constitutionality of the statute. Appellants contend it violates guarantees in both our Federal and the State Constitutions. The constitutional rights claimed to be violated are those guaranteeing freedom of speech, assembly, freedom from involuntary servitude, and denial of equal protection of law. Appellants concede that the act has once been judicially declared free from constitutional infirmity. This Court so held in *City of Detroit* v. *Division 26 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America* (1952), 332 Mich 237. Appellants argue, however, that in the intervening years Federal Supreme Court decisions, notably *Garrity* v. *New Jersey* (1967), 385 US 493 (87 S Ct 616, 17 L ed 562), have eroded the basis of this Court's decision in the Detroit public employees' case.

We cannot agree. We are indeed mindful of the argument so vigorously advanced that public employees generally, and particularly teachers, are denied rights enjoyed by those in private employment, to their prejudice. The wisdom and philosophy of the act in question is not ours to question. We do not hold here that limitations upon the right to strike by public employees could not be exercised by a legislature in an unconstitutional manner. We are concerned with our act and it alone. We do not read *Garrity, supra,* either directly or by implication to have overruled *Detroit* v. *Association of Employees* hereinbefore cited. *Garrity* concerned itself with the privilege against self-incrimination as against job forfeiture, a principle not involved herein. To hold our act flatly unconstitutional we would have

to disregard our own precedent and the overwhelming weight of nationwide authority.  We reaffirm the principle that within limitations not here relevant the sovereignty may deny to its employees the right to strike.

Next, it is argued that if the act be constitutional, as we have here held, it is inapplicable to appellants for 2 reasons: first, because appellants are not "employees" within the meaning of the act, and second, that as to teachers, injunctive relief may not be granted because an alternative exclusive remedy is to be found in the act.

" We consider the first.  The principal thrust of this argument is that, because no contracts of employment were in force between appellants and appellee school district at the time the injunction issued, the involved teachers cannot be employees as a matter of law.  It is contended that the school code, specifically CLS 1961, § 340.569, as amended by PA 1965, No 14 (Stat Ann 1968 Rev § 15.3569), mandates such conclusion.  Appellants refer to this argument as the "keystone issue."  This position is supported by the attorney general, a party hereto by our invitation.  The issue divided us in disposing of the question of the dissolution of the temporary injunction and the continuance of a previously granted stay order thereof.  It has been the subject of the most extensive briefing of any issue in the case, and was the focal point of appellants' forceful presentation on oral argument.  We note all of the foregoing in order that the parties may be fully aware that we have given to it the fullest and most careful consideration.  In finality, we have come to the conclusion that *Garden City School District* v. *Labor Mediation Board* (1959), 358 Mich 258, of necessity must control.  In that case the positions of the parties herein were reversed.  In *Garden City,* the school board sought injunctive restraint against the

State labor mediation board in its attempted mediation between teachers and the board.   The school board challenged that jurisdiction, in part, on the ground that the school code required written contracts, and that the mediation board had no jurisdiction over the terms thereof.   This Court said (pp 262, 263):

"Public school teachers are certainly persons 'holding a position by appointment or employment * * * in the public school service.'

"Appellant school board contends, however, that the provisions of the school code of 1955 (CLS 1956, § 340.569 [Stat Ann 1959 Rev § 15.3659]), by providing that teachers shall be hired by written contract, denies jurisdiction to the labor mediation board for mediation as to any terms which might be included in such contracts.

"The written contract provision was first adopted in 1927, and the legislature was certainly familiar with its requirements when it adopted PA 1947, No 336, which we have quoted.   We read these 2 acts together as allowing mediation of salary disputes *in advance* of the determination of the salary provisions of individual teacher contracts."   (Emphasis supplied.)

Since this Court concluded that there is jurisdiction to mediate grievances *"in advance* of the determination of salary provisions", it follows that such jurisdiction would necessarily attach in advance of the *executing* of the written contracts themselves, which are required in the case of teachers, by the school code.

If teachers, as we have held, *are* subject to the provision of the Hutchinson act dealing with the mediation grievances *in advance* of signing written contracts, we can hardly hold with consistency that they *are not* subject to the no-strike provision of the same act for the same reason.   We are con-

strained to hold that appellants were "employees" within the terms of the act.

We next turn to the exclusivity of remedy argument. It is based on section 6 of the act,[2] which provides:

"Notwithstanding the provisions of any other law, any person holding such a position who, by concerted action with others, and without the lawful approval of his superior, wilfully absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his duties for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. In the event of such request the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, in accordance with the law and regulations appropriate to a proceeding to remove the public employee. The proceedings shall be undertaken without unnecessary delay. The decision of the proceeding shall be made within 10 days. If the employee involved is held to have violated this law and his employment terminated or other discipline imposed, he shall have the right of review to the circuit court having jurisdiction of the parties, within 30 days from such decision, for determination whether such decision is supported by competent, material and substantial evidence on the whole record."

---

2 CL 1948, § 423.206, as amended by PA 1965, No 379.

In this regard we find ourselves in harmony with the holding of the Court of Appeals:[3]

"The claim of the defendants that section 6 of the public employees relations act is the only remedy available to the school board cannot be accepted by this Court. Its provisions for discipline of striking public employees and review procedure for them cannot be interpreted to imply removing the historic power of courts to enjoin strikes by public employees. See 31 ALR2d 1142 and the cases cited therein."

Additionally, we deem it necessary to observe that the whole section deals with after-the-fact remedies by the employee. The withholding of services and the cessation of compensation for services has had to have taken place before the section can operate. It must be said that appellants' position is eminently, indeed inexorably, logical in this regard. The section cannot operate within a situation where injunctive restraint of the withholding of such service has already been granted. We would find ourselves in a complete logical self-contradiction if we were to hold as we have here that courts retain their jurisdiction to issue a restraining order against withholding of services by public employees, and at the same time hold section 6 to be an exclusive remedy. The section seems to us to support the conclusion that the legislature intended that injunctive relief could be granted, but that courts are not required to grant it in every case involving a strike by public employees. To attempt to compel, legislatively, a court of equity in every instance of a public employee strike to enjoin it would be to destroy the independence of the judicial branch of government.

Having held that the Hutchinson act is without constitutional infirmity, that appellants are public

3 7 Mich App 569, 574.

employees and as such subject to its no-strike provisions, and that the courts have jurisdiction to restrain prohibited strikes by public employees, but are not required to do so in every case, we turn to the question of whether in the case at bar the chancellor had before him that quantum of proof or uncontradicted allegations of fact which would justify the issuance of an injunction in a labor dispute case.

We here hold it is insufficient merely to show that a concert of prohibited action by public employees has taken place and that *ipso facto* such a showing justifies injunctive relief. We so hold because it is basically contrary to public policy in this State to issue injunctions in labor disputes absent a showing of violence, irreparable injury, or breach of the peace. For a recent discussion of this question, see *Cross Company* v. *UAW Local No. 155 (AFL-CIO)*, 371 Mich 184. We further so hold because such an interpretation of the act would as before noted raise a serious constitutional question.

We indicated earlier that we deal with a meager record. No testimony was taken on the hearing upon the application for the temporary injunction. Simply put, the only showing made to the chancellor was that if an injunction did not issue, the district's schools would not open, staffed by teachers on the date scheduled for such opening. We hold such showing insufficient to have justified the exercise of the plenary power of equity by the force of injunction. We are mindful of the exemplary conduct of the teachers when the writ, valid on its face, was issued. We are mindful, too, that the appellee district has cooperated by the maintenance of the previous year's schedule of payments to the teachers as was conceded in oral argument.

We recognize that great discretion is allowed the trial chancellor in the granting or withholding of in-

junctive relief. We do not, in ordinary circumstances, substitute our judgment for his. We hold here, however, that there was a lack of proof which would support the issuance of a temporary injunction.

The order of the Court of Appeals, affirming the circuit court is reversed. Hearing the matter as we do *de novo,* we dissolve the temporary injunction hereinbefore issued, and remand to the circuit court for further proceedings. We suggest that such proceedings inquire into whether, as charged by the defendants, the plaintiff school district has refused to bargain in good faith, whether an injunction should issue at all, and if so, on what terms and for what period in light of the whole record to be adduced. No costs, a public question.

BLACK and ADAMS, JJ., concurred with O'HARA, J.

SOURIS, J. *(concurring in reversal).* I agree that the temporary injunction should be vacated, but for reasons other than those stated by my Brethren.

It is my judgment that the individual defendants had not become employees of the plaintiff school district when the complaint was filed. None had entered into the contracts of employment with the school district our legislature saw fit to require "be in writing and signed by a majority of the board in behalf of the district, or by the president and secretary, or by the superintendent of schools * * * when so directed at a meeting of the board." Section 569, school code of 1955, as amended (CLS 1961, § 340.569, as amended by PA 1965, No 14 [Stat Ann 1968 Rev § 15.3569]).[1] Absent such written con

---

[1] Of the 209 teachers of the district, 33 new teachers had signed written contracts with the district, but those contracts, as the district admits, are "subject to whatever master contract might ultimately be negotiated" between the school district and the defendant union.

tracts of employment, the teachers were not yet employees of the school district subject to the "no-strike" provisions of the Hutchinson act.[2] The act's definition of "strike"[3] clearly supports my conclusion that the individual defendants, not yet employees of the school district, did not "strike" in violation of the act. Until written contracts of employment were executed, they were under no obligation to report for duty; they could not absent themselves from their positions, for they had none; they could not stop work, for they had not begun yet to work, nor had they agreed even to work; and, finally, they could not abstain from performing the duties of employment for any purpose, for they had not assumed yet any such duties.

It has been suggested that *Garden City School District* v. *Labor Mediation Board* (1959), 358 Mich 258, supports my Brethren's conclusion that, even without the written contracts of employment required by the school code, the individual defendants were employees and their actions constituted a "strike" prohibited by the Hutchinson act. In the *Garden City School District Case* (p 263) we held that the labor mediation board had jurisdiction to mediate "salary disputes in advance of the determination of the salary provisions of individual teacher contracts." The board acquired jurisdiction in that case upon the teachers' filing of a petition for such mediation on June 13, 1955, during the preceding contract year and apparently while they still were under contracts of employment. I do not mean to suggest by this

---

[2] CL 1948, § 423.202 (Stat Ann 1960 Rev § 17.455[2]).

[3] "As used in this act the word 'strike' shall mean the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or coercing a change in the conditions, or compensation, or the rights, privileges or obligations of employment." CL 1948, § 423.201, as amended by PA 1965, No 379 (Stat Ann 1968 Rev § 17.455[1]).

that jurisdiction would not have attached had the petition been filed after completion of their existing contracts (that issue is not before us, nor was it in the *Garden City Case*), but only that the *Garden City Case* is not authority for the proposition that schoolteachers can be considered employees even absent written contracts. It stands properly only for the proposition that schoolteacher employees may invoke the jurisdiction of the labor mediation board to mediate "salary disputes in advance of the determination of the salary provisions of [the following academic year's] individual teacher contracts."

No employment relationship yet having arisen between the individual defendants and the plaintiff school district when this action was filed, it follows that the injunctive order enjoining defendants from concerted abstention from employment violated the involuntary servitude provisions of the Thirteenth Amendment of the United States Constitution and article 1, § 9 of our State Constitution.

I note my agreement with the latter part of Mr. Justice O'HARA's opinion regarding the judicial inadequacy of the record to support the injunction issued. In other words, even were these defendants employees, I would agree with Justice O'HARA that the chancellor, on the record then before him, should not have granted injunctive relief.

The injunction should be vacated. Defendants should be allowed to tax their costs.

T. M. KAVANAGH, J., concurred with SOURIS, J.

KELLY, J. (*dissenting*). We are in complete agreement with Justice O'HARA's finding "that the Hutchinson act is without constitutional infirmity, that appellants are public employees and as such

subject to its no-strike provisions, and that the courts have jurisdiction to restrain prohibited strikes by public employees."

We disagree, however, with his finding "that there was a lack of proof which would support the issuance of a temporary injunction." We find there was sufficient proof and vote to affirm the opinion of the Court of Appeals.

DETHMERS, C. J., concurred with KELLY, J.

BRENNAN, J. (*dissenting*). The tests for granting an injunction *pendente lite* are different than the criterion used in granting permanent injunctive relief. We said in the case of *Niedzialek* v. *Barbers Union,* 331 Mich 296, at page 300:

"Under the record before us, it appears beyond cavil that when trial on the merits is had the issue will be: Should the picketing by defendants be permitted or should it be enjoined? The final result will depend upon the proof produced at the hearing bearing upon the issue of whether the picketing was pertinent to a lawful labor objective. And the issue may also be presented as to whether or not the picketing was peaceful or otherwise. Neither of these issues can be decided until there is a hearing on the merits. It is also clear, at least reasonably certain, that if in the instant case the picketing is continued in the interim until a hearing on the merits plaintiff will suffer irreparable injury. The contrary cannot be persuasively urged; nor can it reasonably be inferred from the record that enjoining picketing in the interim would result in any permanent or irreparable injury to defendants, even if the ultimate determination should be that the picketing was lawful. It is the settled policy of this Court under such circumstances to grant to a litigant who is threatened with irreparable injury temporary

injunctive relief and thereby preserve the original status quo."

The function of an injunction *pendente lite* is to prevent irreparable harm which would result from natural delay in reaching a trial on the merits. It may be argued that in this case the status quo was summer vacation and that the temporary injunction permitted a change in the status quo by permitting schools to open at the usual time. But the maintenance of actual status quo is not the only function of an injunction *pendente lite*. The court can consider whether under all the facts and circumstances of the case the issuance of the temporary injunction will maintain the parties in that status which is least likely to do irreparable injury to the party who ultimately prevails.

In this case, the plaintiff school board will be entitled to a permanent injunction unless at the trial on the merits the circuit judge should conclude that by reason of its failure or refusal to do equity to the schoolteachers, it has forfeited its claim to equitable relief. Such a judgment cannot be made by the circuit judge until he has heard testimony on the extent of the bargaining and on the position taken by both sides at the bargaining table. If at the hearing on the merits it should appear that the school board's treatment of the teachers has been and is equitable and reasonable, a permanent injunction will issue and the teachers will have no basis for complaint concerning the temporary injunction.

If, on the other hand, it should appear at the trial on the merits that the school board has not offered to do equity and has not taken a reasonable position at the bargaining table, then a permanent injunction will be denied and the temporary injunction will be dissolved. Under such circumstances the temporary injunction will merely have delayed the strike until

the justice of the teachers' cause and the necessity for their strike will have been vindicated in a court of equity. Such delay is a benefit, not an injury, to the teachers.

The temporary injunction should be affirmed and the case remanded to the circuit court for a full evidentiary hearing on the question of whether a final injunction should issue. It is further directed that the court proceed with dispatch so that a decision on a final injunction can be made before the end of the present school year.