[Civ. No. 39753. First Dist., Div. Two. Apr. 19, 1977.]

CITY AND COUNTY OF SAN FRANCISCO,
Plaintiff and Respondent, v.
GEORGE EVANKOVICH et al., Defendants and Appellants.

[Civ. No. 40133. First Dist., Div. Two. Apr. 19, 1977.]

CITY AND COUNTY OF SAN FRANCISCO,
Plaintiff and Respondent, v.
SAN FRANCISCO BUILDING AND CONSTRUCTION TRADES
COUNCIL, Defendant and Appellant.

## COUNSEL

Van Bourg, Allen, Weinberg & Roger, Victor J. Van Bourg, David A. Rosenfeld, Neyhart & Anderson, Jerome M. Garchik, Rosenthal & Leff, Brundage, Beeson & Pappy, Stephen H. Naiman and John Hardy for Defendants and Appellants.

Thomas M. O'Connor, City Attorney, and George E. Baglin, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—On these appeals taken by several San Francisco labor organizations and their officers[1] (hereafter unions) from an order dated April 12, 1976, granting a preliminary injunction to the City and County of San Francisco (hereafter City), the major questions are the application of newly enacted Code of Civil Procedure section 527.3, and whether the injunction was based on a proper evidentiary showing.[2] For the reasons set forth below, we have concluded that the order granting the preliminary injunction must be affirmed.

The City's complaint initially alleged, so far as pertinent, that the City was a subdivision of the State of California (hereafter State) engaged in

---

[1]In No. 39753, the appeal is taken by George Evankovich and the Laborers International Union No. 261, Franz E. Glen and the International Brotherhood of Electrical Workers, Local Union No. 6, Lawrence B. Martin, president of Transport Workers Union, as an individual, as Local 250A was not served; John F. Crowley, the San Francisco Labor Council, Machinists Lodge 68, International Association of Machinists and Aerospace Workers, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38, and Joseph P. Mazzola, and the Glaziers and Glass Workers Local No. 718. In No. 40133, the appeal is taken by the San Francisco Building and Construction Trades Council. So far as pertinent, the other named defendants included the Carpenters Union, Civil Service Association, Service Employees Industrial Union, Hospital and Institutional Workers, Civil Service Building Maintenance Union, Stationary Engineers, and as Does 1-60, additional unions, of which the City's employees were members, and as Does 1-2,000, the City employees who were members of the defendant unions. All of the unions named are members of either the appellant, San Francisco Labor Council, or the appellant, San Francisco Building and Construction Trades Council.

[2]Although the particular dispute has been settled, the legal issues raised present some questions of first impression, which are of continuing public interest, are likely to recur, and accordingly, are not moot (*Hardie* v. *Eu*, 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301]; *Knoll* v. *Davidson*, 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273]).

furnishing governmental and other services to its citizens and the public, and employed members of the unions. Paragraph VII alleged that since March 30, 1976, the unions, in order to force the City to capitulate to their wage demands, were threatening, as of midnight, to "(a) strike, call, induce, and give notice of a strike, against plaintiff;

"(b) picket plaintiff's facilities, buildings and properties, and hinder, delay and interfere with the work thereat, in support, promotion and advocacy of said strike; and

"(c) coerce, compel, induce and encourage plaintiff's employees to strike against plaintiff and to picket plaintiff in support of said strike."

Paragraph VIII alleged that since public employees have no right to engage in the above described acts, these acts were illegal and will interfere with and hinder the City in furnishing governmental and other services to its citizens and the public, including the operation of sewage treatment plants, hospitals (S.F. Hospital, Laguna Honda Home), the Municipal Railway, the San Francisco Airport, and will cause irreparable harm to the City, its citizens and the people of the State. The complaint was verified by the city attorney. A temporary restraining order and order to show cause were issued after a hearing shortly after midnight on March 31; the order was modified after a hearing on April 5.

Subsequently, on April 6, 1976, the complaint was amended to include Martin and Transport Workers Union and added allegations that: 1) as a result of the refusal of members of the previously named unions to cross picket lines, the Municipal Railway system had been shut down and the City was without Municipal Railway service; 2) beginning April 5, striking unions of City employees picketed the bus company under contract with the San Francisco Unified School District, with the result that thousands of pupils were unable to attend school.[3]

After an additional hearing, the court issued the injunction here in issue, enjoining and prohibiting the unions from: "1. *Striking, or calling or inducing* or giving notice *of a strike,* against the plaintiff, City and County of San Francisco;

---

[3]The amended complaint also indicated that since the threatened strike by the Service Employees Union did not materialize, the City sought no relief against that union. The record of the hearing on the temporary restraining order in the instant case indicated that the operating engineers had agreed to supply the personnel necessary for the sewage treatment plants and no relief was sought against that union.

"2. *Picketing* said plaintiff's facilities, buildings, and properties *in support, promotion, or advocacy of a strike* against said plaintiff;

"3. *Hindering, delaying or interfering with work at the facilities, buildings and properties* of said *plaintiff,* in support, promotion, or advocacy of a strike against said plaintiff." (Italics supplied.)

The above italicized language of the injunction here is identical to the language of the injunction sustained by this court (Division Four) in *Trustees of Cal. State Colleges* v. *Local 1352, S. F. State etc. Teachers,* 13 Cal.App.3d 863, 866 [92 Cal.Rptr. 134].[4] ██ Thus, we can briefly dispose of the unions' contentions that by enjoining picketing and advocacy in support of a strike, the injunction violated their First Amendment rights and is facially invalid and overbroad. ██ In the *S. F. State* case, Justice Rattigan (at p. 867) reviewed the numerous recent appellate decisions[5] in this state that have held that in the absence of an

[4]In the instant case, as in the *S. F. State Teachers* case, the unions rely primarily on *In re Berry,* 68 Cal.2d 137, 151 [65 Cal.Rptr. 273, 436 P.2d 273]. They also cite *Madison Sch. Dist.* v. *Wisconsin Empl. Comm'n.* (1976) 429 U.S. 167 [50 L.Ed.2d 376, 97 S.Ct. 421], the recent decision of a federal district court dissolving one of the contempt orders in a subsequent proceeding *(Evankovich* v. *San Francisco,* No. 703941) against one of the parties for publishing an advertisement urging the board of supervisors to engage in collective bargaining on grounds that that injunction was vague and overbroad and the court could not tell whether the specific conduct involved was prohibited *(Glen, Evankovich, etc.* v. *Hongisto and Horn* (N.D. Cal., Jan. 21, 1977) No. C-76-1857, 1860, 1861 438 F.Supp. 10). This court denied a writ of prohibition on the contempt orders in 1 Civil No. 38943 and the state Supreme Court subsequently denied a hearing; the habeas corpus petitions were also subsequently denied. In view of our resolution of the issue here, we do not deem it essential to discuss or distinguish the recent authorities mentioned above, as they merely amplify existing law. Nor need we discuss the unions' contentions based on *United Farm Workers of America* v. *Superior Court,* 14 Cal.3d 902 [122 Cal.Rptr. 877, 537 P.2d 1237], where the temporary restraining order was issued ex parte and without notice to the union.

[5]As stated in *S. F. State Teachers, supra,* at page 867: "In a 1968 decision the Supreme Court indicated that 'whether strikes by public employees can be lawfully enjoined' was an open question. *(In re Berry* (1968) 68 Cal.2d 137, 151 [65 Cal.Rptr. 273, 436 P.2d 273].) However, by reason of compelling authority (some of which appears in post-*Berry* decisions), and despite appellants' elaborate arguments to the contrary, we hold (1) that California follows and applies the common law rule that public employees do not have the right to strike in the absence of a statutory grant thereof; (2) that no such grant exists; (3) that the strike at the college, enjoined by the present judgment, was unlawful (in the sense that it was violative of state policy, although not attended by criminal sanctions); and (4) that the judgment is accordingly valid in all substantive respects and must be affirmed. *(City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 310-313 [87 Cal.Rptr. 258], hg. den., Sept. 24, 1970; cases cited, *id.*; *Almond* v. *County of Sacramento* (1969) 276 Cal.App.2d 32, 35-36 [80 Cal.Rptr. 518]; cases cited, *id.*)"

The state Supreme Court denied a hearing in the *S. F. State Teachers* case, *supra,* as well as in the two subsequently decided cases so holding or stating, *Los Angeles Unified*

authorizing statute, public employees do not have a right to strike, and rejected an argument based on the Thirteenth Amendment proscription of involuntary servitude. The opinion also rejected a contention that the injunction was overbroad as it enjoined all picketing,[6] as follows at page 868: "While peaceful picketing is clearly recognized as an incident of the First Amendment right of free speech (*Thornhill* v. *Alabama* (1940) 310 U.S. 88, 101-104 [84 L.Ed. 1093, 1101-1103, 60 S.Ct. 736]; *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionary Workers' Union* (1964) 61 Cal.2d 766, 769-774 [40 Cal.Rptr. 233, 394 P.2d 921]; *In re Berry, supra,* 68 Cal.2d 137 at p. 152), it is equally clear that the right to picket is constitutionally subject to limitation where the legitimate interests of the state require such action. (*Thornhill* v. *Alabama, supra,* at pp. 104-106 [84 L.Ed. at pp. 1103-1104]; *Hughes* v. *Superior Court* (1950) 339 U.S. 460, 468-469 [94 L.Ed. 985, 994, 70 S.Ct. 718].) The picketing here involved was properly enjoined because it supported a strike by public employees, which (as we have seen) is not a permissible objective under state law (*City of L.A.* v. *Los Angeles etc. Council* (1949) 94 Cal.App.2d 36, 41-42 [210 P.2d 305]); and because, as conducted, it included and incited actual violence and disrupted the operation of the college. (*Steiner* v. *Long Beach Local No. 128* (1942) 19 Cal.2d 676, 682-685 [123 P.2d 20]; *San Diego Gas & Elec. Co.* v. *San Diego Congress of Racial Equality* (1966) 241 Cal.App.2d 405, 407 [50 Cal.Rptr. 638].)

"The judgment enjoins only picketing in support of an actual strike at the college (as distinguished from informational picketing for the

*School Dist.* v. *United Teachers,* 24 Cal.App.3d 142, 145 [100 Cal.Rptr. 806], and *Crowley* v. *City and County of San Francisco,* 64 Cal.App.3d 450, 454 [134 Cal.Rptr. 533]. (*In re Webb* (Oct. 7, 1975) 1 Crim. 14518, cited to the court below, has since been ordered depublished.)

All of the appellate decisions are based primarily on the following authorities: 1) *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen,* 54 Cal.2d 684, 687 [8 Cal.Rptr. 1, 355 P.2d 905], where the court stated that in the absence of a statutory grant thereof, public employees have no right to strike in this State. In *Los Angeles Met.,* however, the court found the requisite statutory authority in the unique legislation creating the public corporation there involved; 2) the provisions of Government Code section 3509, which specifically deny legislative intent to make Labor Code section 923 applicable to public employees. Labor Code section 923 protects the rights of employees to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection" and has been held to protect the right to strike in the private sector (*Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88,* 53 Cal.2d 455, 471 [2 Cal.Rptr. 470, 349 P.2d 76]). Government Code section 3509 is a part of the Meyers-Milias-Brown Act (Stats. 1968, ch. 1390, § 6) that requires public agencies to meet and confer in good faith with recognized employee organizations to reach agreement, and provides for mediation in case of disagreement (Gov. Code, § 3505 et seq.).

[6]An identical contention is made here, as well as a further contention that because of the use of the terms "inducement" and "giving notice of," all speech is also enjoined.

purpose of airing employee grievances), and at the college itself (where the violence occurred). So limited, the injunctive language is not unconstitutionally overbroad. (See its text, quoted *supra.* See [and compare] *In re Berry, supra,* 68 Cal.2d 137 at pp. 152-155; *San Diego Gas & Elec. Co.* v. *San Diego Congress of Racial Equality, supra,* at p. 408.)"

■ We think identical reasoning applies here, as the injunction was limited to picketing and advocacy of an actual strike against the City, an unlawful objective, under the public policy of this State. The unions attempt to distinguish the *S. F. State Teachers* case, as here there was no showing of a strike that was violently conducted or induced violence. However, even peaceful means of concerted action are improper and may be enjoined if the object is unlawful (*City of L. A.* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36 [210 P.2d 305]).

■ As the objective of the strike was unlawful, we hold that the strike and picketing were properly enjoined at the *facilities, buildings and properties of the City.* The unions argue that this latter portion is also unnecessarily broad in scope, as it includes all of the City's facilities and buildings and properties used to provide governmental and other services to its citizens and the public. While a distinction between the City's overall services and those necessary for the protection, health and welfare[7] of its citizens and the public would have been preferable and more accurate, and clearly necessary in any final order, we do not think the trial court abused its discretion as to the scope of the preliminary injunction. ■ As we indicated in *California State University, Hayward* v. *National Collegiate Athletic Assn.,* 47 Cal.App.3d 533, 545 [121 Cal.Rptr. 85]: " 'Generally, a preliminary injunctive order does not reach the merits of the permanent injunctive relief sought in the complaint. The court, at this stage, balances the equities of the parties and determines whether the defendants should be restrained from exercising the right claimed by them pending a trial on the merits. The general purpose is to preserve the status quo until the merits of the action are determined. The court considers who will bear the greater injury should the preliminary injunction be granted and whether a reasonable probability exists the plaintiff will prevail. (*Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 528 . . . .)' (*State Bd. of Barber Examiners* v. *Star* (1970) 8 Cal.App.3d 736, 738 . . . .)" We think that under the circumstances, the order could be reasonably interpreted as to have provided adequate

---

[7]We think this is a more modern and functional distinction than the older and much criticized division between governmental and proprietory activities of municipal corporations.

notice of the proscribed areas (cf. *City of L. A.* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36, 41-42 [210 P.2d 305], where eight different city projects were within the scope of the injunction).

We turn, therefore, to the major contentions on appeal concerning the sufficiency of the evidentiary showing made by the City.

■ The unions first contend that the applicable statute is newly enacted Code of Civil Procedure section 527.3 (Stats. 1975, ch. 1156, § 1, eff. Jan. 1, 1976),[8] set forth below.[9] The City urges that subdivision

---

[8]The record indicates that the application of this statute was argued below.

[9]"(a) In order to promote the rights of workers to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection, and to prevent the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations, the equity jurisdiction of the courts in cases involving or growing out of a labor dispute shall be no broader than as set forth in subdivision (b) of this section, and the provisions of subdivision (b) of this section shall be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes.

"(b) The acts enumerated in this subdivision, whether performed singly or in concert, shall be legal, and no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction which, in specific or general terms, prohibits any person or persons, whether singly or in concert, from doing any of the following:

"(1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace.

"(2) Peaceful picketing or patrolling involving any labor dispute, whether engaged in singly or in numbers.

"(3) Assembling peaceably to do any of the acts specified in paragraphs (1) and (2) or to promote lawful interests.

"(4) Except as provided in subparagraph (iv), for purposes of this section, 'labor dispute' is defined as follows:

"(i) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (a) between one or more employers or associations of employers and one or more employees or associations of employees; (b) between one or more employers or associations of employers and one or more employers or associations of employers; or (c) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' of 'persons participating or interested' therein (as defined in subparagraph (ii)).

"(ii) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in

(d), quoted below, excludes public employees. The unions focus on the wording of subdivision (b)(iv) and urge that if public employees were to be specifically excluded, the Legislature would have done so in exactly the same terms as the clear exclusion of jurisdictional strikes. The unions maintain that subdivision (d) merely indicates that the substantive rights of public employees are not expanded by the new statute. We note that the language of subdivision (d) is substantially identical to that of subdivision (c), which appears to exclude from Code of Civil Procedure section 527.3 the Agricultural Labor Relations Act (Lab. Code, § 1140 et

---

whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(iii) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employee.

"(iv) The term 'labor dispute' does not include a jurisdictional strike as defined in Section 1118 of the Labor Code.

"(c) Nothing contained in this section shall be construed to alter or supersede the provisions of Chapter 1 of the 1975-76 Third Extraordinary Session, and to the extent of any conflict between the provisions of this act and that chapter, the provisions of the latter shall prevail.

"(d) *Nothing contained in this section shall be construed to alter the legal rights of public employees or their employers, nor shall this section alter the rights of parties to collective-bargaining agreements under the provisions of Section 1126 of the Labor Code.*

"(e) It is not the intent of this section to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity." (Italics added.)

"Added Stats. 1975 ch. 1156 § 1.

"*Note*—Stats. 1975 ch. 1156 also provides: § 1. In the interpretation and application of this act the public policy of this state is declared as follows:

"Under prevailing economic conditions the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor and thereby to obtain acceptable terms and conditions of employment. It is therefore necessary that he have full freedom of association and self-organization and the right to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection.

"Equity procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon notice to and hearing of the responding party or parties, or that issues after hearing based upon written affidavits alone and not wholly or in part upon examination, confrontation and cross-examination of witnesses in open court, is peculiarly subject to abuse in labor litigation for each of the following reasons:

"(a) The status quo cannot be maintained, but is necessarily altered by the injunction.

"(b) The determination of issues of veracity and of probability of fact from the affidavits of the opposing parties which are contradictory and, under the circumstances, untrustworthy rather than from oral examination in open court, is subject to grave error.

"(c) The error in issuing the injunctive relief is usually irreparable to the opposing party.

"(d) The delay incident to the normal court of appellate procedure frequently makes ultimate correction of error in law or in fact unavailing in the particular case."

seq.). As usual, the legislative history of the statute is scant and merely indicates that the first part of subdivision (d) through the term "public employees" was added by the Senate on June 25, 1973; the subsequent portion was added by the Assembly (4 Sen. J. (1975-1976 Reg. Sess.) pp. 8081 and 8319; Final History, p. 371).

Reading subdivision (d) in the context of the entire statute, including the preamble setting forth a public policy that favors collective bargaining rights, it is readily apparent that the statute is directly contrary to the existing law as to the collective bargaining rights of public employees. *City of San Diego* v. *American Federation of State etc. Employees,* 8 Cal.App.3d 308, 313 [87 Cal.Rptr. 258], held that the denial of collective bargaining rights to employees in the public sector (although these rights were guaranteed to employees in the private sector) was a constitutionally approved classification and not violative of constitutional guarantees of equal protection. We think, therefore, that the purpose of subdivision (d) was as stated, to preserve the existing law of public employee relations. We note the similarity of the language used in Code of Civil Procedure section 527.3, subdivision (d), to Government Code section 3509[10] (the Meyers-Milias-Brown Act). In the *S. F. State Teachers* case, *supra,* this court held that the language of Government Code section 3509 excluded public employees. We can only assume that the Legislature was aware of both *City of San Diego* and *S. F. State Teachers, supra,* and would not have added subdivision (d) if it intended to change the law.

Our view is consistent with the refusal of the Legislature to enact a comprehensive scheme and administrative apparatus for the regulation of labor relations in the public sector (see Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts,* 23 Hastings L.J. 719, 721), despite its findings that public sector and private sector employment relations were sufficiently similar to warrant similar bargaining provisions (Final Rep. of the Assem. Advisory Council on Public Employee Relations, Mar. 15, 1973). Nor can we, contrary to the unions' contentions, here discern a pattern or public policy of proscribing the same procedures for employee disputes in the public sector as exist for the private sector. The only consistency we see is a failure to enact comprehensive legislation and administrative machinery

---

[10]"The enactment of this chapter shall not be construed as making the provisions of Section 923 of the Labor Code applicable to public employees." As explained in footnote 5 above, Labor Code section 923 has been held to grant employees in the private sector the right to bargain collectively and the right to strike.

for either sector and a piecemeal approach to both: i.e., Agricultural Labor Relations Act and Code of Civil Procedure section 527.3. The resolution of public employee disputes under the many different applicable statutes and ordinances has been left largely to the political processes and the political power of the parties to each dispute (*Glendale City Employees' Assn., Inc.* v. *City of Glendale,* 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609]; *Fire Fighters Union* v. *City of Vallejo,* 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971], *Crowley* v. *City and County of San Francisco,* 64 Cal.App.3d 450 [134 Cal.Rptr. 533]).

The piecemeal approach was continued by the 1975 Legislature that, along with Code of Civil Procedure section 527.3, also adopted a new statutory procedure and administrative machinery to govern the employers and employees of selected groups of public employees—those at the elementary, secondary, and community college levels (Stats. 1975, ch. 961; Gov. Code, § 3540 et seq., commonly known as the Rodda Act.) We take judicial notice of the Rodda Act and the fact that legislation providing a similar scheme for all public employees was rejected, along with other proposed public employee schemes; the same was true of the 1975-1976 session. (Collective Bargaining in Cal. Public Jurisdictions, Alternatives and Considerations For Implementation Legislative Analyst, Feb. 27, 1975, p. 10 et seq.; Cartabruno, Anatomy of a Failure: How the Plug was Pulled on Comprehensive Collective Bargaining Legislation, 1 Assem. Office of Research Rptr. No. 2, Dec. 1975, pp. 1-10; 31 Cal. Public Employment Relations (Dec. 1976) pp. 84-89.) In the light of this legislative history and existing law, we cannot agree with the unions' contentions concerning subdivision (d). We can only read the subdivision to exclude public employees. We hold, therefore, that the applicable evidentiary standard required in the instant case was that of Code of Civil Procedure section 527.[11]

We advert incidentally to the parties' contentions concerning the requisite verification of the pleadings.[12] The record indicates that the complaint was accompanied by a declaration of the city attorney, under penalty of perjury, the equivalent of an affidavit (Code Civ. Proc., § 2015.5). Further, a pleading of the city attorney, acting in his official capacity, need not be verified (Code Civ. Proc., § 446).

[11]Code of Civil Procedure section 527, so far as here pertinent, provides: "An injunction may be granted at any time before judgment upon a *verified complaint,* or *upon affidavits* if the complaint in the one case, or the affidavits in the other, *show satisfactorily that sufficient grounds exist therefor.*" (Italics supplied.)

[12]The unions' reliance on *Ancora-Citronelle Corp.* v. *Green,* 41 Cal.App.3d 146, 148 [115 Cal.Rptr. 879], is specious, as there the pleading was not verified.

■ The unions' major complaint focuses on the final portion of Code of Civil Procedure section 527, which requires a satisfactory showing of sufficient grounds for an injunction. They argue that the court below abused its discretion and failed to hold a proper evidentiary hearing. The unions point out that the allegations of the complaint were controverted by their declarations and were not sufficiently specific, as only ultimate facts were alleged. ■ As to the first issue, it is well settled that even where there is a verified answer denying all material allegations of the complaint, the peculiar circumstances of the case may justify the granting of the preliminary injunction (*Metropolitan L. Co., Ltd.* v. *Greenfield,* 20 Cal.App.2d 246 [66 P.2d 722]). ■ We note that here, no answer was filed and only two counterdeclarations. Martin's declaration, under penalty of perjury, indicated that as president of the Transport Workers Union, he had neither the ability nor the authority to keep that union from striking; Anderson's declaration, under penalty of perjury, indicated that he had been informed by his clients that all emergency services (e.g., hospital, public water supply and waste) necessary for the health, safety and welfare of the City were being maintained, and accused the City of unclean hands by incorporating by reference and seeking judicial notice of all of the pleadings, etc. in superior court action No. 703941. These declarations, at best, created a conflict with the City's amended complaint. ■ The substantial evidence rule applies to preliminary injunctions, as well as the additional rule requiring us, when weighing the question of a trial court's exercise of discretion in granting a preliminary injunction, to view the facts most favorably to the court's disposition (*San Diego Gas & Elec. Co.* v. *San Diego Congress of Racial Equality,* 241 Cal.App.2d 405, 407 [50 Cal.Rptr. 638]). Under these rules, the court did not abuse its discretion, despite the apparent conflict.[13]

The unions urge that the applicable standard for a satisfactory showing is that set forth in *School Dist. for City of Holland* v. *Holland Educ. Assn.* (1968) 380 Mich. 314 [157 N.W.2d 206]. The *Holland* case held that it was contrary to the express public policy of Michigan to issue injunctions in labor disputes in the absence of a showing of violence, irreparable injury or breach of the peace. Thus, the court struck down a no-strike injunction based on a showing that the district's schools would not open staffed by the teachers on the scheduled opening date. The salutary holding of *Holland, supra,* however, is based on the express

[13]Anderson's declaration is based on hearsay and the record does not indicate that any attempt was made at the hearing to introduce evidence indicating that the emergency services were being maintained.

public policy of Michigan, as set forth in its statutes, which prohibited public employee strikes, but also provided machinery for compulsory arbitration and mediation of grievances in advance of the determination of the salary provisions of individual contracts (see Comments, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector*, 68 Mich.L.Rev. 260). As we have indicated above, the public policy of this State with respect to public employees is not as sophisticated. *Los Angeles Unified School Dist.* v. *United Teachers*, 24 Cal.App.3d 142 [100 Cal.Rptr. 806], is almost directly contrary to *Holland.* In *Los Angeles School District, supra,* the preliminary injunction was sustained on the grounds that the teachers' strike would result in a loss of state and federal funds to the district. In view of the Legislature's failure to enact legislation similar to that of Michigan and other states, and its rejection to date of the findings and recommendations of its 1973 advisory council on public employer-employee relations, we do not feel free to establish by judicial decision an evidentiary rule based on *Holland, supra.*

■ Returning to Code of Civil Procedure section 527, we note that while affidavits containing specific factual allegations to supplement the complaint for a preliminary injunction are desirable (2 Witkin, Cal. Procedure (2d ed.) Provisional Remedies, § 92, p. 1527), they are not required; neither is a full evidentiary hearing with testimony from all sides (Witkin, *supra,* § 94, p. 1528), although such a practice was approved in *Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 524 [67 Cal.Rptr. 761, 439 P.2d 889]. We think here, in view of the unlawful objective of the threatened strikes, the trial court did not abuse its discretion at the preliminary injunction phase in preventing cross-examination of the city attorney and permitting a more complete adversary hearing.

Also, the unlawful objective of the strike disposes of the unions' contentions concerning the allegations of ultimate facts and lack of specificity. Under the particular circumstances, the court would have abused its discretion in denying the preliminary injunction (*Riviello* v. *Journeymen Barbers etc. Union,* 88 Cal.App.2d 499, 500 [199 P.2d 400]). Admittedly, in *Los Angeles Unified School District, S. F. State Teachers* and the *San Diego* cases, *supra,* the allegations and/or showings were more specific. While such specificity is desirable, we think it can rationally be deduced from the allegations of the instant complaint that the City was unable to provide governmental and other services, including the school buses, San Francisco General Hospital, Laguna

Honda Home, the sewage treatment plant, and the San Francisco Airport. Thus, from the allegations of the complaint concerning the many unions whose members were City employees and were required to operate the above and other facilities, an interference with essential governmental services provided by the City could reasonably be inferred.

Finally, we turn to the unions' contention that the court abused its discretion in denying its defense of unclean hands. As indicated above, this defense is based on the Anderson affidavit and the incorporation therein of judicial notice of another superior court proceeding No. 703941. The unions' argument is predicated on the allegations in No. 703941 that the City had failed to meet and confer in good faith and submit to mediation in violation of the Meyers-Milias-Brown Act and its Municipal Employees Relations ordinance. However, we need not reach the merits of these issues which are pending before this court in another appeal. The City points out that section 8.401 of the City charter requires the City to fix the compensation for City employees on or before April 1 of any year, to become effective at the beginning of the next fiscal year. The provisions of the charter are the law of the state and have the force and effect of a legislative enactment (Cal. Const., art. XI, § 3, subd. (a)). The court here considered the opposing declarations, and since the issues raised have not yet been settled by any reported case, properly found no unconscientious conduct on the part of the City for the purpose of this proceeding on the preliminary injunction. Accordingly, we conclude that there was no abuse of discretion.

The order granting the preliminary injunction is affirmed.

Kane, J., and Rouse, J., concurred.

Petitions for a rehearing were denied May 19, 1977, and the petitions of the defendants and appellants for a hearing by the Supreme Court were denied June 30, 1977. Sullivan, J.,* participated therein. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petitions should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.