**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DUBO MANUFACTURING CORPORATION, Respondent.**

**Nos. 15658, 16204.**

United States Court of Appeals
Sixth Circuit.

Nov. 12, 1965.

---

Morton Namrow, Atty., N. L. R. B., Washington, D. C., for petitioner. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., on the brief.

Roy E. Browne, Akron, Ohio, for respondent.

Before MILLER * and EDWARDS, Circuit Judges, and MACHROWICZ **, District Judge.

PER CURIAM.

This cause is before the Court upon separate petitions of the National Labor Relations Board to enforce its orders of May 27, 1963 and September 16, 1963, against the Dubo Manufacturing Corporation, respondents herein. The orders were issued following unfair labor practice proceedings under Sec. 10 of the National Labor Relations Board Act, as amended. (29 U.S.C. Sec. 151, et seq.)

The facts leading to the alleged violation and the Board's orders are as follows. The United Steelworkers Union, AFL–CIO, was the certified representative of the respondent's production and

* Judge Miller did not participate in the decision in these cases.

** Honorable Thaddeus M. Machrowicz, Judge United States District Court for the Eastern District of Michigan, sitting by designation.

maintenance employees since 1955, and entered into a series of contracts with the respondent, the most recent having been executed on June 21, 1961, for a term ending June 8, 1962. It contained a union shop clause and a grievance procedure culminating in arbitration.

On January 2, 1962, while this last contract was still in effect, there were sixteen (16) production employees on the day shift and three (3) on the night shift. On that morning William Nesit, who was out on sick leave for a few days, reported back for work but failed to produce a letter or certificate from his attending physician as he was ordered to do on the day he took leave. When the Superintendent ordered him to leave unless such a letter or certificate was produced, the remaining employees left the plant, but before doing so were advised by the Superintendent that if they did they would be considered as having quit voluntarily and that they would have to work thereafter without the protection of a collective bargaining agreement.

On the following morning, January 3, they offered to return to work, but were informed that they could not do so as their action of the preceding day constituted a voluntary quitting.

Article IX of the then existing contract provided for a grievance procedure to be followed by the aggrieved employee. Admittedly the workers before leaving did not follow this procedure.

On April 2, 1962, the Union requested that respondent meet with it in order to begin negotiating a new contract to replace the agreement which was due to expire in June. The attorney for the respondent refused, stating that no meeting would be productive until after disposition of the Board charge and the Union's civil suit, both of which were then still pending. He proposed that in the meantime the "situation remain status quo", refusing to give any further clarification.

On June 5, 1962, the Union met and authorized a committee of three to call a strike if the Company refused to negotiate. On June 8, 1962, the Union, with only one dissenting vote, voted to strike for failure of the respondent to negotiate with them. The strike took place on June 9, 1962 and thereupon the respondent hired thirteen (13) new employees to replace the striking employees.

On July 27, 1962, the Union voted to terminate the strike and return to work "without a contract". The respondent was accordingly notified to that effect on the same day by letter, but it failed to reply. When seven (7) of the strikers reported in person to work on June 30, 1962, and made unconditional offers to return to their former or substantially equivalent positions, they were refused reinstatement because they had been replaced by newly hired employees.

On January 31, 1962, shortly after the January walk-out, the Union filed a charge with the Board alleging, inter alia, that respondent wrongfully discharged and failed to reinstate, with all their rights, the employees who participated in the January 2nd walk-out.

On February 6, 1962, the Union also petitioned the United States District Court for the Northern District of Ohio, Eastern Division, for an order (which was thereafter granted) to compel the respondent to arbitrate grievances arising out of the same walk-out. (United Steelworkers of America, AFL–CIO, et al v. Dubo Manufacturing Corporation, No. C 62–152.)

On August 28, 1962, Trial Examiner Sherman of the National Labor Relations Board issued an intermediate report in which he held that the discharge of the sixteen (16) employees on January 2nd was in violation of Sec. 8(a) (3) and (1) of the Act. He further found in his report that respondent had engaged and was engaging in unfair labor practices by refusing to negotiate with the Union in June, 1962 in violation of Sec. 8(a) (5) of the Act, and that the statements of the Superintendent to the employees on January 2nd, 1962, were reasonably calculated to convey the impression that they no longer would enjoy the right to be represented by the Union in present-

ing grievances, this being an unlawful threat in violation of Sec. 8(a) (1) of the Act.

The Board in its order of May 27, 1963, affirmed these rulings of the Trial Examiner with the exception of the issue regarding violation of Sec. 8(a) (3) as a result of the discharge of the sixteen (16) employees on January 2nd. On this issue the Board deferred its ruling, pending completion of the arbitration directed by the District Court.

The Board ordered the respondent to cease and desist from the unfair labor practices found and from in any other manner interfering with its employees' rights under the Act. Affirmatively, the Board ordered the respondent to bargain with the Union upon request, to reinstate the June, 1962 strikers, to reimburse them for wages lost as a result of the discrimination against them, and to post appropriate notices.

On August 14, 1962, the Union filed another charge against respondent claiming respondent violated Sec. 8(a) (1) and (3) of the National Labor Relations Board Act. Trial examiner Eady found in his report of January 30, 1963, that the respondent engaged in unfair labor practices which led to the strike of June 9, 1962; that it discriminated with respect to the hire and tenure of employment of the employees who struck legally on June 9, 1962, and that it interfered with, restrained and coerced its employees in the exercise of the rights guaranteed in Sec. 7 of the Act.

On January 30, 1963, the Board affirmed these findings and ordered full reinstatement of the June 9th strikers to their former or substantially equivalent positions without prejudice to their seniority and other rights and privileges which they had prior to their discharge. It also ordered the respondent to cease and desist from the unfair labor practices found to have existed.

In a supplemental decision and order dated September, 1963, the Board considered the issue deferred in its order of May 27, 1963. It reversed Trial Examiner Sherman's finding of illegality in the discharge of sixteen (16) employees engaged in the January walk-out and held that the walk-out was unprotected activity in violation of the collective bargaining agreement.

The three issues raised by the pleadings in this case are:

1. the propriety of the Board orders finding that respondent refused to bargain in violation of Sec. 8(a) (5) and (1) of the Act.

2. the propriety of the Board orders finding that respondent violated Sec. 8(a) (3) and (1) of the Act by refusing to reinstate the employees who went on strike in June, 1962, upon their unconditional offer to return to work, and

3. whether there was substantial evidence on the record to support the Board's finding that respondent interfered with, restrained and coerced its employees in violation of Sec. 8(a) (1) of the Act.

■ On the first issue, it is the position of the respondent that it did not know, in view of the findings of the two hearing examiners cited above, which group of employees it was to bargain with, those discharged on January 2nd, or those who were hired to replace them. This argument is without merit since both groups were members of the Union which was the designated bargaining agent and the respondent's obligation was to bargain with the bargaining agent and not with the employees, as required by Sec. 8(a) (5) and 9(a) of the Act.

■ The contention that the employees who replaced those who walked out on January 2nd were not voluntary members since their joining the Union was required by the contract provisions is also baseless since there is no evidence in the record to support any claim that their membership in the Union and their vote on the June strike were not voluntary. Since the Union was at that time unquestionably the designated agent of the majority of the employees and the duly authorized representative under the

current bargaining agreement by which the respondent was bound, it was respondent's duty to bargain with it.

■ The respondent contends however that it was excused from bargaining until completion of the proceedings before the Board and the District Court. The pendency of these proceedings did not relieve the respondent from good faith collective bargaining. An employer may not condition the performance of its statutory duty upon the withdrawal or the outcome of such proceedings. American Laundry Machinery Co. v. National Labor Relations Board, 174 F.2d 124 (6th Circuit) upholding the National Labor Relations Board decisions cited in 76 N.L.R.B. 981.

Authorities relied upon by the respondent all involved instances in which the employer refused to negotiate because of a good faith doubt as to whether the Union represented a majority of the workers. The record does not indicate that to be the situation in the present case.

■ As to the second issue, namely whether the Board properly found that respondent violated Sec. 8(a) (3) and (1) of the Act by refusing to reinstate the employees who went on strike in June, 1962, the record clearly substantiates the finding of the Board. Since this Court is upholding the Board on the first issue, (unfair labor practices in refusing to bargain prior to the strike), it follows that the strike was caused by such unfair labor practices and therefore the respondent also violated the Act by refusing to reinstate the strikers upon their unconditional application to return to work.

In Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309, the Court said:

"In the absence of some contractual or statutory provisions to the contrary, petitioners' unfair labor practices provide adequate grounds for the orderly strike that occurred here. Under those circumstances, the striking employees do not lose their status and are entitled to reinstatement with back pay, even if replacements for them have been made."

The authorities cited by respondent on this issue all involve cases in which the employer was found not to have engaged in unfair labor practices. They are not applicable in this instance since the employer here was found to have engaged in illegal practices.

■ The only remaining issue is whether there is substantial evidence that respondent interfered with, restrained, or coerced its employees in violation of Sec. 8(a) (1) of the Act. The record stands undisputed that on the heels of the January 2nd walk-out, the employees were admittedly told that they would be treated as new employees and would lose their previously earned seniority, also that they would be denied the protection of the Union contract. There is an obvious threat of economic reprisals in such remarks, in violation of Sec. 8(a) (1) of the Act. Respondent contends, however, that this is nullified by the action of the Board in holding that their discharge was lawful.

The Board did in its order of September 16th, 1963, hold that the January 2nd strikers were not entitled to reinstatement because they were engaged in unprotected activity. It did not, however, reverse the finding in its original order of May 27th, 1963 in which it found that respondent did violate Sec. 8(a) (1) of the Act by coercive statements of its President and Superintendent. There was without doubt substantial evidence in the record to support the Board's findings in this respect.

It is the conclusion of this Court that there is substantial basis in law and in fact for the findings of the Board, and therefore its petition for enforcement of its orders of May 27, 1963 and September 16, 1963, is hereby granted and the respondent is ordered to comply therewith.