[Civ. No. 16928. Third Dist. Mar. 21, 1979.]

STATIONARY ENGINEERS, LOCAL 39, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO et al., Plaintiffs and Appellants, v.
SAN JUAN SUBURBAN WATER DISTRICT et al., Defendants and Respondents.

## Counsel

Van Bourg, Allen, Weinberg & Roger, Michael B. Roger and David A. Rosenfeld for Plaintiffs and Appellants.

Zane Vorhes and L. H. Schuering for Defendants and Respondents.

## Opinion

**REGAN, J.**—Plaintiffs appeal from a judgment, after trial by the court, denying relief sought in their combined petition for writ of mandate and complaint for injunction and damages.

Defendant San Juan Suburban Water District (district), is a community services district organized and existing under title 6, division 2, of the Government Code of the State of California. The individually named respondents are members of the defendant district board of directors (board), except for John P. Van Vleck who was secretary and office manager of the district at all relevant times.

Plaintiffs Stationary Engineers, Local 39, International Union of Operating Engineers, AFL-CIO (union), is an employee organization within the meaning of Government Code section 3500 et seq. and represents the individuals named as individual plaintiffs.

On February 25, 1975, the union notified the district that it had been authorized pursuant to regular procedures to be the exclusive bargaining agent on all matters relating to employment of the employees in the maintenance and operation unit of the defendant district. The district informally recognized the union as bargaining agent for purposes of "meeting and conferring," and instructed its attorney in March 1975 to meet and confer with the union.

By letter of April 1, 1975, the business representative of the union transmitted a written proposed comprehensive agreement to the attorney for the district. It covered formal recognition of the union, and many details of employment rights including hours, wages, sick leave, safety, insurance, pension plan and the like.

On April 15, 1975, the attorney for the district wrote to the union business representative that the district directors had appointed a two-man personnel committee to meet and discuss the proposed union contract with the union.

On October 8, 1975, and after several meetings between the personnel committee and the union business representative, the board itself had a meeting with the union representative. Prior to this meeting the representative had been negotiating with the board's two-man personnel commit-

tee, which had no authority to act on behalf of the board other than to meet and carry back to the board what had occurred in the meetings. The business representative requested permission to be heard at the full board meeting on October 8, and the board informed him he could do so. At that meeting he informed the board that enough time had passed; that he was "through fooling around," and unless the contract was signed at that meeting the men would go on strike. The board, in fact, had progressed only through three or four pages of the ten-page proposed contract by the time of their last meeting in September, at which the union agent was not invited or present. The board would not continue through the document at the meeting on October 8, 1975, and the employees struck on October 9, 1975. On or about October 10, the employees were warned to return to work or they would be fired. The strike continued and the employees having failed to return to work were dismissed and replaced with new employees on or about October 15, 1975.

■ The issue presented is whether the district, a public employer, may so discharge its employees who have gone on strike. We note, in this connection, that although the trial court found the district did not properly comply with the "meet and confer" provision of the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510), the court nonetheless ruled the strike illegal and held the employees were thus absent without leave and could be fired in any event. We agree.

Plaintiffs claim that "It is the question of the creation of an adequate remedy which is before this Court." They argue that the answer to this question is found in federal law with respect to the obligation to bargain in good faith, and the right of employees to engage in strikes. Plaintiffs point to federal cases which have held that in the private sector strikers have rights under federal laws to return to work even where they have been permanently replaced, where they were fired after striking due to an unfair labor practice on the part of their employer. (See, e.g., *NLRB* v. *Fleetwood Trailer Co.* (1967) 389 U.S. 375 [19 L.Ed.2d 614, 88 S.Ct. 543]; *Retail, Wholesale and Department Store U.* v. *N.L.R.B.* (D.C. Cir. 1972) 466 F.2d 380; *Mastro Plastics Corp.* v. *Labor Board* (1956) 350 U.S. 270 [100 L.Ed. 309, 76 S.Ct. 349]; *NLRB* v. *International Van Lines* (1972) 409 U.S. 48 [34 L.Ed.2d 201, 93 S.Ct. 74]; *N.L.R.B.* v. *Dubo Manufacturing Corporation* (6th Cir. 1965) 353 F.2d 157.) These cases are not pertinent and are inapposite.

Although California courts have used federal cases to assist in interpretations of *some* provisions of the Meyers-Milias-Brown Act,[1] under California law public employees have no right to strike whether their employer violates the Meyers-Milias-Brown Act or not. (*Los Angeles Unified School Dist.* v. *United Teachers* (1972) 24 Cal.App.3d 142 [100 Cal.Rptr. 806]; *Trustees of Cal. State Colleges* v. *Local 1352, S.F. State etc. Teachers* (1970) 13 Cal.App.3d 863 [92 Cal.Rptr. 134]; *City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308 [87 Cal.Rptr. 258]; *Almond* v. *County of Sacramento* (1969) 276 Cal.App.2d 32 [80 Cal.Rptr. 518]; see, also, *City and County of San Francisco* v. *Evankovich* (1977) 69 Cal.App.3d 41, 47-48 [137 Cal.Rptr. 883], and numerous cases cited therein; Gov. Code, § 3509.) Nothing in the Meyers-Milias-Brown Act itself gives any statutory right to strike, nor any right to be rehired after firing because of unauthorized absence due to an illegal strike by public employees.

As to plaintiffs' request of this court to "create an adequate remedy," we can only say that we do not legislate. Insofar as a judicial "remedy" might exist for the plight in which plaintiffs now find themselves, the time has long since passed to make use of such remedy. Our decision in *Almond* v. *County of Sacramento, supra,* 276 Cal.App.2d 32, pointed to the "remedy" or path to be followed by employees who have a grievance over what they believe to be lack of good-faith efforts of a public agency to meet timely and confer over labor matters. The employees should have early petitioned the lower court for a writ of mandate to compel the agency to act expeditiously in good faith. They should *not* have waited (as they did) until they had participated in an unlawful strike and then sought an after-the-fact injunction and damages following loss of their jobs, and mandate to restore them to their jobs. (*Id.,* at p. 39.) The strike was unlawful and cannot be validated by proof that a worthy grievance existed.

We shall affirm the judgment on the above ground, but also on the further ground that our reading of the record demonstrates to our satisfaction no worthy grievance existed. The trial court found generally, in finding number 19, the district and its representatives violated its

[1]See, e.g.. *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]; *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971]; *Lipow* v. *Regents of the University of California* (1975) 54 Cal.App.3d 215, 225 [126 Cal.Rptr. 515].

statutory obligation to "meet and confer in good faith" with plaintiffs. Eight specific acts or omissions were found upon which to base this general finding. The general finding is unsupported by the eight specific acts or omissions as we shall explain.

*First*, the trial court found the board appointed the "bargaining team" (personnel committee) from the board without any authority to bargain and reach an agreement. Contrary to plaintiffs' assertion, this showed no lack of good faith since the statutory law specifically provides the "representatives" of a public agency and the employee organization shall reach an understanding "which shall not be binding . . . ." (Gov. Code, § 3505.1.) Only the full board could take action which bound it. (Gov. Code, § 61225.)

*Second,* the trial court found the board bargaining team failed to recommend adoption of a final memorandum of understanding. This shows no lack of good faith since the Meyers-Milias-Brown Act does not so require, but only that the "ultimate determinations are to be made by the governing body itself . . . ." (See *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 25 [132 Cal.Rptr. 668, 553 P.2d 1140].)

*Third,* the trial court found the bargaining team failed to reach a meaningful agreement. This did not prove bad faith of the board. There were a number of unresolved issues causing delays. The record shows plaintiffs had submitted some so-called "boiler plate" language which the management committee had not yet approved and in fact was intended to be presented to the full board.

*Fourth,* the trial court found the management and representatives of the district had failed to disclose to plaintiffs the plans and policies calling for changes in working conditions, staffing and wages. This does not show bad faith of the board since these matters were tied to the adoption of a final district budget and only a preliminary or tentative budget had been approved by the finance committee even *after* the strike. The final budget was not adopted until sometime in November.

*Fifth,* the trial court found unilateral changes in certain terms and conditions of employment had been made by the board during the time the "meet and confer" process was going on. These changes did not show lack of good faith since they were taken with prior written notice and plaintiffs did not appear to discuss the issues. This procedure is provided for in Government Code section 3504.5.

*Sixth*, the trial court found representatives of the board attempted to deal directly with district employees, including making suggestions they abandon the union. Three directors individually were alleged by certain employees to have done these acts. The directors denied having done so. The trial court's finding on conflicting evidence is binding on appeal, but it does not follow that this finding shows lack of good faith in the five-man board. The acts were done, if at all, *after* the strike had occurred. They also were not the official acts of the five-man board.

*Seventh*, the trial court found the board failed to adopt the agreement in an "expeditious and timely manner . . . ." This finding is too vague and tenuous to show lack of good faith. The record discloses the parties held sessions eight or nine times. The board committee never refused a meeting or cancelled one. When the full board met on October 8, 1975, it had previously (in September) gone through portions of the 10-page submitted contract. At the October meeting plaintiffs' representative informed the board that unless it adopted the full contract that night, the men would "hit the bricks." The strike ensued the next day. ■ There is nothing in the law which requires the board to act in any particular time spectrum on a contract presented to it by a union and the board's negotiating committee. A reasonable time requirement might be implied, but meet and confer in good faith has never been interpreted to mean either party must agree to a given proposal in a time span delineated by the phrase "expeditious and timely." This purported "finding" of fact by the trial court is nothing more than an opinion of the court which attempts to write into the Meyers-Milias-Brown Act a statutory requirement which does not exist.

*Eighth*, the trial court found the board adopted a budget which directly affected the meet and confer issues without notice or an opportunity for the union to meet and confer over "such proposed changes." This finding shows no lack of good faith. The strike occurred on October 9, 1975, after the union representative had told the board at its October 8, 1975, meeting that the union was "through fooling around" and the men would "hit the bricks." The budget was not adopted until the next month, sometime in November 1978, long after plaintiff union had struck and had ceased attempts to meet and confer in good faith.

Findings of fact numbers 20 and 21, which directly follow those discussed above are to the effect that the strike which occurred on October 8 or 9, 1975, was "prompted" by the lack of good faith of the

board and would not have taken place but for "acts of bad faith" by the board. Having concluded number 19 and its 8 various subdivisions discussed above are not supported, we necessarily conclude numbers 20 and 21, which are a derivative thereof, are likewise unsupported by the record. It follows that conclusions of law numbers 5, 6 and 7 are not supported by sound findings of fact, since these conclusions are to the effect the strike was precipitated by failure of the employer to comply with the Meyers-Milias-Brown Act due to violation of the "meet and confer in good faith" provisions.

The judgment is affirmed.

Puglia, P. J., concurred.

**REYNOSO, J.**—I concur in the result. The reasoning of the majority on the issues of appellate review and appropriate available remedies to an aggrieved public employee are sufficiently bothersome that I set forth my disagreement.

1. *Appellate Review*

Generally, an appellate court will not disturb the findings of the trial court. I have examined the record looking at the evidence in the light most favorable to the court's findings, giving the prevailing party the benefit of every reasonable inference, and resolving conflicts in support of the judgment. I have concluded the findings and conclusions are supported by substantial evidence. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, pp. 4236-4237.) The appellate court has no power to judge the effects or value of evidence presented at trial, to weigh the evidence, to consider the credibility of the witnesses,[1] or to resolve conflicts in the

---

[1]The importance of credibility is emphasized by a reproduction of a portion of the testimony of the cross-examination of a witness, a director for the San Juan Suburban Water District. The transcript appears to paint a picture of an evasive witness. However, without the opportunity to view the witness, I cannot know the credibility of this, or any other, witness: "Q. Now, were you on the personnel committee that was meeting and conferring with the union? A. No. Q. Were you on the finance committee that was — A. Yes, I was. Q. — adopting the proposed budget? A. Uh-huh (affirmative.) Q. At that time you were aware then that your committee had approved a budget that was going to eliminate five field positions? A. No. Q. You were not aware of that? A. No. Q. Well, according to a document that's in evidence, Mr. Sherwood, says on October 1 your committee, the finance committee, approved for submission to the Board a budget which

evidence. (*Buckhantz* v. *R. G. Hamilton & Co.* (1945) 71 Cal.App.2d 777 [163 P.2d 756]; 6 Witkin, Cal. Procedure, *supra,* at pp. 4237-4238.) The trial court, not the appellate tribunal, must decide what, if anything, testified to by this witness is creditable.

The trial court found that the district had violated its obligation to meet and confer in good faith. "The question of good or bad faith is primarily a factual determination based on the totality of the circumstances (see e.g., *Labor Board* v. *Insurance Agents,* 361 U.S. 477, 498 [4 L.Ed.2d 454, 469, 80 S.Ct. 419, 432]; *N.L.R.B.* v. *General Electric Company, supra,* 418 F.2d 736, 756) and therefore on appeal the trial court's finding must be upheld if it is supported by the record as a whole. . . . (*N.L.R.B.* v. *Herman Sausage Co., supra,* 275 F.2d 229, 231.)" (*Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 25 [129 Cal.Rptr. 126].) There was testimony at trial that the bargaining team was a fact-finding committee without any authority; that the bargaining team failed to recommend that the district adopt a memorandum of understanding; that the directors made unilateral changes in the terms and conditions of employment; that representatives of the board attempted to deal directly with employees, circumventing the recognized representative; and that representatives of the board encouraged employees to abandon their union and instead join an association. The trial court, after hearing the nine witnesses, made findings of fact that the board did not meet and confer in good faith. There is substantial evidence in support of such findings.

## 2. *The Remedy*

The Meyers-Milias-Brown Act, Government Code section 3500 et seq., outlines the district's responsibility to public employees. Consistent with this scheme, the district must meet and confer in good faith with employee representatives. Here, the district breached its obligation under the act by its failure to confer in good faith. The district, in effect, frustrated the purpose and intent of the act. In response to the district's

---

eliminated five positions. Does that refresh your recollection? A. We might have—we might have recommended it. Q. Showing you Plaintiff's Exhibit 15, which contains a resolution which indicates that the finance committee met on October 1 and recommended a proposed position adjustment and eliminating five positions. A. Uh-huh (affirmative). Q. Do you recall attending a meeting on October 1 and making that recommendation in the committee? A. No, but if it was—I take your word for it. Q. Well, if the strike ensued on October 9 and you on October 1 made a recommendation, then I assume you are aware of the recommendation that you made? A. Surely. . . ."

breach, the employees staged a work stoppage. Because the employees failed to return to work, they were fired. I am not prepared to establish an absolute rule that the employer may ignore the law on the one hand and "profit" from it on the other. That is, the employer may not wantonly disregard the law with respect to its own duties and insist the employees dot every "i" respecting their duties. Little tacos as well as big enchiladas merit the protection of the courts. We must give effect to the statutory scheme.

The parties advance two distinct theories, poles apart, which address the crucial issue of how the provisions of the act are to be effectuated. The respondents contend, and the majority agree, that the remedy is a petition for writ of mandate to compel the employer to meet and confer in good faith. On the other distant pole, appellants argue the answer is found in *Mastro Plastics Corp.* v. *Labor Board* (1956) 350 U.S. 270 [100 L.Ed. 309, 76 S.Ct. 349], wherein the United States Supreme Court gave reinstatement rights to employees who were terminated. While both of these remedies are within the range of the permissible, neither appears appropriate under the facts of this case.

The question before us is whether reinstatement of employees will effectuate aims of the act. Federal labor law, richer than our state experience, gives firm guidance in determining a standard that balances the rights of employers and employees. (See *Kohler Co.* v. *N.L.R.B.,* 148 NLRB 1434, 1445; affd, (D.C.Cir. 1965.) 345 F.2d 748.) The N.L.R.B. reasoned that the seriousness of the employees' misconduct and the seriousness of the employer's unlawful acts must be considered in determining whether the remedy would effectuate the policies of the act. This makes sense. We need to recall that, unlike the federal legislation, there is no protected right to strike among public employees. The California balance, therefore, must tilt strongly toward discouraging work stoppages. Thus, in some circumstances, the balance will be against reinstatement. This is true when the facts are ambiguous as to the employer's violation. If, on the other hand, the acts of the employer demonstrate a patent disregard of its duty (which, in turn, causes the strike) the balance will be in favor of full reinstatement. We deal with a factual situation between the "ambiguous" and "patent disregard" standards.

A careful review of the entire moderately confusing record convinces me that the seriousness of the employer's misconduct in the case at bar does not outweigh that of the employees' work stoppage sufficient to order reinstatement. I conclude, accordingly, that under the facts of this case, the employees have no right of reinstatement.