[No. C002528. Third Dist. Nov. 23, 1988.]

STOCKTON POLICE OFFICERS' ASSOCIATION, Plaintiff and Respondent, v.
CITY OF STOCKTON et al., Defendants and Appellants.

COUNSEL

R. Thomas Harris, City Attorney, and Cynthia L. Humbert, Deputy City Attorney, for Defendants and Appellants.

Mastagni, Holstedt, Chiurazzi & Curtis and Richard J. Chiurazzi for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Defendants, City of Stockton and its director of personnel services, Roger Fong, (collectively the City) appeal from a judgment granting plaintiff, the Stockton Police Officers' Association (SPOA), a preliminary injunction. The injunction, mandatory in effect, compels the City to "meet and confer" regarding a change in psychological counseling services which the City had already put into effect. Because SPOA waived its right to meet and confer on the issue, we shall reverse the judgment.

The material facts are undisputed. Director Fong sent SPOA a letter dated June 4, 1986, advising that the current contract for psychological counseling services would soon expire and the City was interested in moving toward a different type of counseling service. In the letter Fong solicited "input" on the subject from SPOA and requested a response by June 17, 1986. Richard Neely, SPOA's president, received the letter sometime after June 17, 1986. He apparently did not request additional time to respond.

On September 2, 1986, Fong and Neely attended a meeting of a subcommittee of the City council at which the issue of counseling services was discussed. At that time the council had not yet entered into a new contract for counseling services. The verbatim record of the subcommittee proceedings reveals that after Neely stated "I do believe it is a meet . . . .", he was interrupted by Fong and never finished expressing his thought. In a declaration filed in the trial court, Neeley described the occurrence as follows: "I expressed my concern at that meeting about the proposed changes because I considered the matter to be a 'meet and confer' issue and began to express that view when I was interrupted by Defendant, ROGER FONG."

The City council approved a new contract for counseling services on September 8, 1986.

On December 16, 1986, SPOA formally requested a meet and confer session concerning the new contract. The City denied SPOA's request in a

letter, dated December 23, 1986, pointing out: "The program is in place. It's the City's position that nothing further needs to be done." SPOA then commenced the underlying action for injunctive relief.

■ Employer-employee relations between the City and its police department employees are governed by the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510; further statutory references to sections of an undesignated code are to the Government Code). SPOA is the recognized employee organization for employees in the City's police department within the meaning of section 3501, subdivision (b). The City is a public agency within the meaning of section 3501, subdivision (c). Section 3504.5, in pertinent part, provides: "Except in cases of emergency as provided in this section, the governing body of a public agency, and boards and commissions designated by law or by such governing body, shall give *reasonable written notice* to each recognized employee organization affected of [*sic*] any ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation proposed to be adopted by the governing body or such boards and commissions and shall give such recognized employee organization the opportunity to meet with the governing body or such boards and commissions." (Italics added.)

■ The City's letter of June 4, 1986, provided SPOA "reasonable written notice" as required by section 3504.5 of the City's plan to change counseling services. It stated in part: "The City's current contract for counseling services expires shortly and the City of Stockton is interested in moving toward an assessment/referral system. An assessment/referral system concentrates on reaching more employees for diagnostic purposes rather than treatment purposes. Prior to requesting [proposals] for such services, I am interested in any input you may have on this subject."[1]
■ Upon receiving this written notice, the burden shifted to SPOA under section 3505 to request a meet and confer session.[2] SPOA made no such

---

[1] Since solicitation of "input" went beyond the required written notice it is unnecessary to address SPOA's argument that the letter did not comply with the statute because "the term 'input' . . . in no way signifies a desire to negotiate, but at most it signifies only a desire to allow SPOA to offer suggestions."

[2] Section 3505 reads as follows: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action. [¶] 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly *upon request by either party* and continue for a reasonable

request until December 16, 1986, over three months after the City entered into a new contract for counseling services.

SPOA emphasizes Neely's uncontradicted testimony that he did not receive the City's letter until after June 17, 1986, the requested response date. However, Neely acknowledged he received the letter sometime before the September 2, 1986, meeting of the City council subcommittee. As of that date SPOA still had ample opportunity to request the City to meet and confer on the issue. Even if we assume Neely's abortive comment to the subcommittee ("I do believe it is a meet . . .") evidenced such an intent, the request was stillborn and there is no evidence it was ever in fact made.

■ In *Stationary Engineers* v. *San Juan Suburban Water Dist.* (1979) 90 Cal.App.3d 796, 802 [153 Cal.Rptr. 666], this court stated with regard to unilateral employer changes: "These changes did not show lack of good faith since they were taken with prior written notice and plaintiffs did not appear to discuss the issues. This procedure is provided for in Government Code section 3504.5." This is manifestly correct. The "meet and confer" procedure is intended to operate on decisions yet to be taken, not to serve as a mechanism retrospectively to review policy already implemented. Thus "reasonable written notice" is required of proposals "to be adopted" (§ 3504.5) so that the public agency may meet and confer with the employee organization "prior to arriving at a determination of policy or course of action." (§ 3505.) The statute does not require the City to meet and confer after properly noticed policy has been adopted without any such request from the employee organization seeking to bargain.

SPOA argues the employer has a duty to initiate the meet and confer process by a request. The cases cited on behalf of this theory do not support it. *Labor Board* v. *Columbian Co.* (1938) 306 U.S. 292 [83 L.Ed. 660, 59 S.Ct. 501] stands for the principle that the employer does not violate its statutory duty to bargain unless the employees have requested bargaining. The court stated: "In the normal course of transactions between them, willingness of the employees is evidenced by their request, invitation, or expressed desire to bargain, communicated to their employer." (*Id.*, at p. 297 [83 L.Ed. at p. 664].)

Likewise, the two California cases cited by plaintiff do not stand for the proposition that employees can never be deemed to have waived their

period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent." (Italics added.)

statutory right to meet and confer. In *Dublin Professional Fire Fighters, Local 1885* v. *Valley Community Services Dist.* (1975) 45 Cal.App.3d 116 [119 Cal.Rptr. 182], the court in broad language described the employer's obligation to meet and confer as "absolute," at least "in proper cases," and said: "We conclude that a request for conference may be made at any time by either side . . . ." (*Id.*, at p. 118.) It does not appear, however, that the public agency employer in *Dublin* had given advance notice to the employees of the proposed policy change which required the use of temporary instead of regular employees for overtime work. Similarly, in *Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802 [165 Cal.Rptr. 908], the City council adopted a policy affecting the terms and conditions of employment without giving the employees advance notification of its impending adoption.

In its ruling the trial court stated: "The City takes the position that it is not required to 'meet and confer' in regard to the changes in counseling service because such services were not part of the Memorandum of Understanding." To the contrary, the record shows the City acknowledged that while the counseling service was not part of the memorandum of understanding, it was within SPOA's "scope of representation" and hence subject to the meet and confer requirement before unilaterial action could be taken. The trial court's statement may have been occasioned by imprecise language in the December 23, 1986, letter to SPOA in which the City asserted that the meet and confer requirement did not apply to an "already-in-place program" as to which SPOA had received advance notification. In any event the issue of the City's readiness to meet and confer is academic where, as here, the City gave adequate notice under section 3504.5 and SPOA failed to respond with a timely request to meet and confer.

Finally, SPOA urges that the City cannot be prejudiced by the judgment because the injunction merely requires the City to talk with SPOA after which it "is free to take whatever action it deems necessary"; and that the obligation to "meet and confer" does not require the City to concede anything. Nevertheless, the City has fully discharged its statutory duty to give notice of a proposed change in working conditions and SPOA's failure thereafter timely to invoke the meet and confer requirement constitutes a waiver of that right which is fatal to its cause of action for injunctive relief.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for the defendants.

Blease, J., and Marler, J., concurred.