[No. D009278. Fourth Dist., Div. One. Sept. 12, 1990.]

SAN DIEGO ADULT EDUCATORS, LOCAL 4289, AMERICAN
FEDERATION OF TEACHERS/CALIFORNIA FEDERATION OF
TEACHERS, AFL-CIO, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
SAN DIEGO COMMUNITY COLLEGE DISTRICT, Real Party in
Interest.

[No. D009280. Fourth Dist., Div. One. Sept. 12, 1990.]

SAN DIEGO COMMUNITY COLLEGE DISTRICT, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
SAN DIEGO ADULT EDUCATORS, LOCAL 4289, AMERICAN
FEDERATION OF TEACHERS/CALIFORNIA FEDERATION OF
TEACHERS, AFL-CIO, Real Party in Interest.

**COUNSEL**

Gattey & Messersmith and James M. Gattey for Petitioner in No. D009278 and Real Party in Interest in No. D009280.

Christine A. Bologna, Donn Ginoza and Robert G. Thompson for Respondent.

Liebert, Cassidy & Frierson, Larry J. Frierson and Sandra Owens Dennison for Petitioner in No. D009280 and Real Party in Interest in No. D009278.

**OPINION**

**FROEHLICH, J.**—We review herein a decision of the Public Employment Relations Board (PERB)[1] which adjudicated claims by the San Diego Adult Educators, Local 4289, AFL-CIO (Union) of unfair labor practices against the employer, the San Diego Community College District (College Dis-

---

[1] PERB is an independent state administrative agency created by the Educational Employment Relations Act (Gov. Code, §§ 3540-3548) to administer employer-employee disputes arising within the public school systems in the State of California. (Gov. Code, § 3540.) PERB has original jurisdiction to determine claims of unfair labor practices (Gov. Code, § 3541.3, subd. (i)), and is empowered to issue decisions and orders upon its finding of an unfair labor practice. (Gov. Code, § 3541.5, subd. (c).) Review of PERB orders is by way of petition for extraordinary relief directly to the Court of Appeal. (Gov. Code, § 3542.) Review is administered by the Court of Appeal, generally, as are proceedings involving other extraordinary writs. (Gov. Code, § 3542, subd. (c).)

trict). The PERB decision, which affirmed the previous proposed decision of the administrative law judge, determined that the College District had engaged in an unfair labor practice by contracting with an independent agency to provide instruction on the college campus without bargaining with the Union. The PERB order contained certain injunctive relief directed toward future negotiating relations of the parties. The order also required that the College District rescind any current contractual arrangement with the independent agency. Respecting affected employees, whose interests were represented by the Union, the PERB order denied back wages or reimbursement for losses as to certain employees, while requiring compensatory benefits be ascertained and awarded to others.

The PERB decision and order resulted in petitions for review from both parties. The Union agrees with the factual and legal conclusions of PERB, but argues that the remedy granted is ineffectual because it does not make *all* aggrieved employees whole. College District petitions to overturn the basic unfair practice determination, claiming error on several grounds.

We conclude that the PERB decision and determination are sustainable on all grounds except one. We therefore partially affirm and partially reverse the decision.

## FACTS

Prior to 1983 the College District had offered noncredit classes in several languages. Classes in languages, which we will call herein "minor" (Farsi, Swedish, Tagalog), were taught by instructors who were paid on an hourly basis. The more popular languages (French, Spanish, German) were conducted by instructors who were tenured, contracted, and paid on a monthly basis. All the classes in question were offered to the public on a fee basis. All the teachers were part of the bargaining unit represented by the Union.

On March 9, 1983, the College District decided to discontinue its classes in German, French and Spanish, and advised teachers of those courses of termination of employment. The reason for discontinuance of these offerings was economic. Because of the higher cost of the certificated teachers conducting the classes, the fees collected from students did not cover the College District's expenditures, producing a loss.

Following this decision, the College District began receiving communications and pressure from the public seeking reinstatement of the classes. After public presentations of the issue to the meeting of trustees held May 4, 1983, the trustees directed the chancellor of the College District to

investigate the cost of alternatives to restore the foreign language classes. At its May 23 meeting the trustees discussed specific options for renewing the language classes. One option was to induce students to enroll in the regular college-credit language classes. The other alternative involved inducing some other agency to administer and finance the language classes. Other agencies mentioned at the meeting were the Parks and Recreation Department, the YMCA, and the San Diego Community College District Foundation, Inc. (Foundation).

The Foundation is a nonprofit corporation established in the mid-1970's for the purpose of assisting and promoting educational activities in the college district. While it is in many respects an entity closely associated with the College District, it was found by PERB to be a true separate entity and not the alter ego of the College District. This conclusion is not disputed on appeal.

The result of discussions at the May 23 meeting was a request that the chancellor contact the Foundation asking that it offer the language classes. At this time the College District intended to continue its own offerings of the minor languages. In June of 1983 a contract was entered between the Foundation and the College District providing for the class offerings by the Foundation, and a public announcement of the program was made.

Thereafter the trustees received complaints from faculty and students about the special treatment accorded the French, German and Spanish program. At its August 3 meeting these criticisms were referred to the chancellor. Further discussion of the problem at the August 22 meeting resulted in a decision to discontinue *all* fee-based language classes and include the formerly excluded languages (Farsi, Swedish, Tagalog) in the program contracted to the Foundation. Termination of the instructors in the "minor" languages, therefore, occurred as of August 22, 1983.

PROCEDURAL BACKGROUND

On December 21, 1983, Union filed an unfair practice charge claiming that the College District had failed to negotiate with the Union over the transfer of work from the college to the Foundation. The charge was filed with PERB within the six-month period of limitations provided by Government Code section 3541.5, subdivision (a).[2] The charge was not *served* upon

---

[2] Government Code section 3541.5, subdivision (a) provides in part: "Any employee, employee organization, or employer shall have the right to file an unfair practice charge, except that the board shall not do . . . the following: [¶] (1) issue a complaint in respect of any

the College District, however, until after expiration of the six-month period. The College District learned of the charge either during or shortly following the expiration of the six-month period, and answered same and participated in administrative proceedings thereafter in due course.

The final result of these procedures was the issuance of the PERB decision and order which is the subject of the cross-petitions for extraordinary review now before us.

## ISSUES

The Union's petition does not attack the findings of fact made by PERB. It contends that the factual conclusions mandate a greater remedy than was granted in the PERB order. The College District's petition, on the other hand, attacks the PERB decision on several grounds, asserting lack of jurisdiction and insufficiency of the evidence to support conclusions reached. The precise issues for our determination, and the logical order in which we deem it best to address them, are:

1. Did PERB lack jurisdiction to consider the unfair practice claim because of failure to serve the College District within the six-month period prescribed by Government Code section 3541.5, subdivision (a)?

2. Is PERB's conclusion of an unfair practice from the contracting out of the language classes to the Foundation without prior bargaining with the Union sustainable?

3. If the College District's action was an unfair practice, has Union waived its bargaining rights by failing to assert them during the periods of public consideration by the District's trustees?

4. If the PERB conclusions of unfair practice are sustainable, did it err in failing to grant adequate relief to the aggrieved parties?

## STANDARD OF REVIEW

PERB's findings of factual matters including ultimate facts are, "if supported by substantial evidence on the record considered as a whole, . . .

---

charge based upon an alleged unfair practice occurring more than six months prior to the filing of the charge . . . ."

conclusive." (Gov. Code, § 3542, subd. (c).) The concept of affirmance of the trier of fact's conclusions if supported by "substantial evidence" is fortified in cases of review of the determinations of an administrative board because of the presumed expertise of the board. ■ "[T]he relationship of a reviewing court to any agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, generally is one of deference." (*Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1012 [175 Cal.Rptr. 105].)

In terms of construction of the law to be utilized by the administrative agency, determinations made within the agency's area of expertise are also to be accorded deference. Such determinations will be accepted unless they can be found to be "clearly erroneous." (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856 [191 Cal.Rptr. 800, 663 P.2d 523]; *Los Angeles Unified School Dist.* v. *Public Employment Relations Bd.* (1986) 191 Cal.App.3d 551, 556 [237 Cal.Rptr. 278]; *Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 619-620 [224 Cal.Rptr. 631, 715 P.2d 590].)

With these rather special rules of review in mind, we proceed to examine the issues.

DISCUSSION

*Impairment of Jurisdiction by Failure to Serve Within Six Months*

■ As noted above, Union filed its charge with PERB within six months of the conduct of College District which was claimed to be an unfair practice, but did not serve the District within that period. Government Code section 3541.5, subdivision (a) precludes PERB from issuing a complaint on an alleged unfair practice occurring "more than six months prior to the filing of the charge." The statute does not define what "filing" requires. Acting in accordance with authority contained in Government Code section 3541.3, subdivision (g), PERB has adopted regulations which elaborate upon the requirements for contents of a charge. Title 8, California Code of Regulations,[3] section 32615 states: *"Contents of Charge.* (a) A

---

[3] While the parties in their briefs have referred to this code under its name applicable at the time this proceeding arose, for consistency of reference we employ the new name assigned to this code by the Legislature effective January 1, 1988, i.e., the California Code of Regulations.

charge may be filed alleging that an unfair practice or practices have been committed. The charge shall be in writing, signed under penalty of perjury by the party or its agent with a declaration that the charge is true, and complete to the best of the charging party's knowledge and belief, and contain the following information: . . . [¶] (b) Service and proof of service on the respondent pursuant to Section 32140 are required."

College District contends that the six-month limitation is jurisdictional and that PERB must be held to its long-standing regulation which, it contends, requires service and proof of service on the respondent as a part of "filing." PERB counters by saying that the service requirement is not contained in the statute itself, and that the provisions of the regulation are directional rather than jurisdictional. The PERB decision reflected upon the purpose for the regulatory requirement of service, finding that it was "to protect a respondent from stale claims or to prevent prejudice because a respondent was unable to defend itself due to late service." (*San Diego Community College District* (Apr. 5, 1988) PERB Dec. No. 662 [12 PERC [¶] 19054, p. 227].) Noting that no prejudice had been either alleged or shown by the College District because of the failure to serve, and that it had in fact promptly filed an answer to the complaint, PERB held that the objectives of the service regulation had been served and that late service would not be deemed a jurisdictional flaw.

We are disposed to uphold the administrative agency's construction of its own regulation. The governing statute does not impose a service requirement. The omission of such may be presumed intentional. (See *Estate of Simpson* (1954) 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991].)[4] PERB's finding that the failure of service in this case caused no prejudice is supported by substantial evidence, and because its construction of its own regulation is not clearly erroneous, we defer to that interpretation. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.*, *supra*, 33 Cal.3d at p. 856.) We therefore reject this foundational contention of the College District.

---

[4] See, e.g., Labor Code section 1160.2 which deals with the filing of a complaint charging an unfair labor practice before the Agricultural Labor Relations Board (ALRB). The jurisdictional language precluding the issuance of a complaint for an unfair labor practice occurring more than six months prior to the filing of the charge refers not only to the "filing" but requires the "service of a copy thereof upon the person against whom such charge is made." Having been adopted in the same legislative session as the Educational Employees' Relations Act, the wording of the ALRB provision appears to establish that the Legislature understood and intended a difference in the two provisions (although frankly no justification is perceivable in requiring service in one case and not in the other).

*Contracting Out the Language Courses as an Unfair Practice*

■ The transfer of work from existing employees to employees of others by subcontracting the work is a decision which requires negotiation with the union. It is therefore an unfair practice for an employer unilaterally to shift work by means of contracting the services previously done by its employees to an outside entity. (See *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203 [13 L.Ed.2d 233, 85 S.Ct. 398, 6 A.L.R.3d 1130]; *Arcohe Union School District* (Nov. 23, 1983) PERB Dec. No. 360 [7 PERC [¶] 14294]; *Oakland Unified School District* (Dec. 16, 1983) PERB Dec. No. 367 [8 PERC [¶] 15008].) The PERB factual determination in this case, which is not challenged, is that the College District and the Foundation are separate entities, unsullied by alter ego theories. A transfer of work from the College District to the Foundation, therefore, was "contracting out" in the sense that an independent entity was retained to provide the educational service previously rendered by the College District.[5]

■ There is no question that the College District contracted with the Foundation without consultation or negotiation with the Union. If, therefore, the Foundation undertook to perform work on behalf of the College District which displaced union members who had been performing such work, an unfair practice will have been established.

A central tenet of our analysis is that certain decisions, even though they adversely affect unit members, do not necessarily require negotiation. As explained by Justice Stewart in his concurring opinion in the seminal case of *Fibreboard Corp.* v. *Labor Board*, *supra*, 379 U.S. at page 223 [13 L.Ed.2d at page 246], "managerial decisions, which lie at the core of entrepreneurial control [such as] [d]ecisions concerning . . . the basic scope of the enterprise" are not automatically the subject of collective bargaining even though such decisions may well impact on employment security. For example, the decision entirely to terminate a bargaining unit's work is a management decision which does not necessarily require negotiation. (See *Otis Elevator Co.* (1984) 269 NLRB 891 [applying *Fibreboard*]; *Stanislaus County Department of Education* (Dec. 30, 1985) PERB Dec. No. 556 [10 PERC [¶]

[5] Deprivation of work previously accomplished by certain employees through transfer to a different employment unit of the same employer is "transfer" of bargaining unit work. A unilateral "transfer," like a "contracting out" which deprives a bargaining unit of work, can also constitute an unfair practice. (See, generally, *Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 661 [224 Cal.Rptr. 688, 715 P.2d 648.) Had the Foundation been held the alter ego of the College District we would have been faced with an alleged unfair "transfer" rather than an alleged unfair "contracting out."

17039].) Thus, the decision to terminate employees, based on lack of sufficient funds to support their continued employment, has been described as a "fundamental managerial concern which requires that such decisions be left to the employer's prerogative." (*Newman-Crows Landing Unified School District* (June 30, 1982) PERB Dec. No. 223 [6 PERC [¶] 13162].)

The evidence in this case is undisputed (and neither the administrative law judge nor PERB found or intimated to the contrary) that at the time the College District determined to terminate the noncredit fee courses in French, German and Spanish it had no intention or expectation of sponsoring those courses through other means. Termination occurred in March 1983. It was not until new and presumably unexpected public pressure was put upon the trustees that they commenced consideration of alternative means of providing the language courses, which was in May—a full two months later. There is no suggestion in the factual record or in appellate briefs that the separation of the two decisions was not bona fide, or that the original decision to eliminate these classes was made in contemplation of restoring such classes under the auspices of the Foundation. The most important factor in determining whether an employer's decision to have work done by a subcontractor rather than regular employees is unlawful is the impact of the subcontracting on the regular employees. (See, e.g., *Equitable Gas Co.* v. *N.L.R.B.* (3d Cir. 1981) 637 F.2d 980, 989-990; *Olinkraft, Inc.* v. *N.L.R.B.* (5th Cir. 1982) 666 F.2d 302, 306-308.) Here, because the District terminated "popular" language classes before the public pressure caused it to contract with the Foundation to provide the classes, the former District-employed teachers suffered no detriment by the decision to contract with the Foundation. Absent some showing that union members were terminated *because* of the decision to contract out their jobs, we decline to hold that the decision to contract out was a subject of mandatory negotiation.

At the time of contracting with the Foundation, the College District was not "contracting out" work then done by its employees; that work had been terminated two months previous. We therefore find the PERB conclusion that the College District "continued" to offer the language courses to be unsupported by any evidence.[6]

---

[6]On page 14 of the PERB decision the finding is: "When . . . the District received public rebuke because of its decision, it then sought alternatives to discontinuing the language classes. By contracting with the Foundation, the District continued to offer this service, albeit by using instructors supplied by the Foundation. If the District had truly ceased to offer the language instruction service, it would not have contracted with the Foundation at all, and the Foundation would have been free to decide for itself to offer the language classes if it so desired."

We find the reasoning of board member Porter's dissent to be persuasive. Having clearly discontinued the language courses, the subsequent arrangement with the Foundation was not a "contracting out," but was an entirely new arrangement. As did board member Porter, we find *Fremont Union High School District* (Dec. 30, 1987) PERB Dec. No. 651 (12 PERC [¶] 19021) to be controlling precedent as to PERB, and persuasive with respect to our own review. In that case courses previously offered by the Fremont district had been discontinued. The district thereafter induced the private University of La Verne to offer and operate the same courses and to lease district classrooms for the courses. PERB found no "contracting out" in that case because there was no connection between the termination of the program and its later emergence by use of an independent agency. The only difference between *Fremont* and our situation is one of time: the interval between cessation and resurrection of the program in *Fremont* was several years, while the interval in this case is two months. We find the amount of time expiring between the two decisions not to be consequential to the analysis.[7]

We recognize, however, that in this discussion we have been dealing with the "popular" language courses which were terminated because of their expense and then later recommenced under the auspices of the Foundation. The rationale utilized in enabling us to come to the conclusion there was no "contracting out" as to these classes requires our reaching the opposite conclusion as to the less popular fee classes, which were terminated *after* the contract had been made with the Foundation. This switch of service was a joint decision: to terminate the classes in Tagalog, etc., then being taught by Union members, and contemporaneously to transfer this work to an outside contractor. As to these employees, we concur with the majority in the PERB decision that an unfair practice was established.

---

[7] We recognize that two recent PERB decisions addressing analogous situations, *Whisman Elementary School District* (Apr. 20, 1990) PERB Decision No. Ad 214 (14 PERC [¶] 21091) and *Beverly Hills Unified School District* (Jan. 19, 1990) PERB Decision No. 789 (14 PERC [¶] 21042), reached conclusions which may appear contrary to the conclusions reached herein. However, *Whisman* is distinguishable because the administrative law judge there took great pains to contrast its facts from *Fremont Union High School District, supra*, PERB Decision No. 651, pointing out (1) the Fremont program was terminated without any intent to ever resume the program and (2) the lack of connection between the school district and the outside entity which ran the new program. In the *Beverly Hills* case there was some implication that, as a factual matter, the program was not terminated without intent to resume its operation. Indeed, on the facts in Beverly Hills, the district made no effort to justify its "contracting-out" under a *Fremont* rationale, and instead defended its acts based on grounds of "waiver" and "consistency with established past practices." Since those cases are factually and legally inapposite, we do not view them as controlling in this case. To the extent they do conflict with our rationale, however, we decline to adopt their approach.

### Waiver of Bargaining Rights by Union

■ Failure by the Union to assert its bargaining rights after receiving notice of the proposed change in terms of employment constitutes waiver of its rights. (*Stockton Police Officers' Assn.* v. *City of Stockton* (1988) 206 Cal.App.3d 62 [253 Cal.Rptr. 183].) Formal notice of a proposed change delivered to a union official is, of course, appropriate. Notice need not, however, be formal to be effective. When a union official with authority to act has actual notice of the intended change, together with adequate time to decide whether to demand negotiation before a final decision is made, the union will be deemed to have received adequate notice. (*Victor Valley Teachers Association* v. *Victor Valley Union High School District* (Apr. 10, 1986) PERB Dec. No. 565 [10 PERC [¶] 17079].)

■ College District contends that Union received adequate notice of the proposed contract with the Foundation and that its failure to take any sort of action prior to execution of the agreement in June of 1983 constituted waiver of its rights. College District's position is based upon the admitted fact that Union's president was in attendance at all of the meetings of trustees at which the agreement with Foundation was discussed, and also received copies of the agendas and minutes of the meetings.

PERB concluded, affirming factual findings of the administrative law judge, that the manner in which the subject was raised at trustees' meetings was not sufficient to give effective notice to the Union's president. Initial discussions, it found, were not sufficiently specific to give notice of an actual contract proposal. The first specific proposal for a contract came on the very day that the contract was approved, thus giving the Union's president no practical opportunity to seek negotiation or reconsideration.

We conclude that the question of the practicality of informal notice, as well as the decision as to whether the information constituting purported notice comes sufficiently early to permit effective negotiation, are matters more factual than legal in nature. The import of statements made at school trustees' meetings, and the reaction to them expected of a union president in attendance at the meetings, seem to us to relate to transactions with which PERB is supposed to have special knowledge. Having reached this conclusion, we should consider with great hesitation the overturning of the PERB decision that no waiver occurred. "If there is a plausible basis for the Board's factual decisions, we [should not be] concerned that contrary findings may seem to us equally reasonable . . . ." (*Rivcom Corp.* v. *Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 756-757 [195 Cal.Rptr.

651, 670 P.2d 305].) Certainly PERB's findings on the issue of waiver are "plausible." We therefore decline to disturb them.

*Error in Remedy Provided by PERB*

We have concluded that PERB was in error in finding an unfair practice resulting from the original contracting with the Foundation. The remedies prescribed in the PERB order resulting from this determination must, therefore, be reversed. We have, however, affirmed the PERB determination of an unfair practice in its later contracting out of the minor language courses. We must, therefore, address Union's assertion that the remedies provided in the PERB order are inadequate.

Union objects to the PERB order because it did not require reinstatement of terminated employees nor did it award backpay for the employees terminated on March 9 (as distinguished from those teaching minor languages terminated on Aug. 22). We have concluded, above, that no remedy is required for the March 9 employees. Backpay was awarded as to the August 22 terminees, and hence we need not address the contention as to them. As to these employees the PERB order requires rescission of any current contractual arrangement *and* reinstatement of such employees in any future language classes offered by the District. We apprehend, therefore, that total and adequate remedies have been provided in the PERB order with respect to the employees who have established an unfair practice claim. We therefore deny the petition of Union.

DISPOSITION

The PERB decision is reversed insofar as it found an unfair labor practice with respect to the Union employees whose employment was terminated on March 9, 1983. We affirm the balance of the PERB decision, however, thus affirming the determination that College District committed an unfair practice in contracting out the language courses which we have denominated the "minor" languages, terminating the employment of certain Union members on August 22, 1983. We thus affirm the cease and desist orders numbered A1 through A3 in the PERB decision, and affirm the affirmative actions required by orders numbered B1 through B6, *deleting*, however, the references to and remedies provided for those employees whose termination occurred on March 9, 1983. It is our conclusion that the agreement with the Foundation as it pertains to the major language courses was not an unfair practice. Therefore, the provisions of the PERB order relating to rescission

and renegotiation shall be applicable only insofar as the Foundation agreement relates to the minor language courses. Each party shall bear its own costs on appeal.

Todd, Acting P. J., and Huffman, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 13, 1990. Mosk, J., Broussard, J., and Kennard, J., were of the opinion that the petition should be granted.